# The Morning Call Inc. v. The Council of the Borough of East Stroudsburg

*Malcolm J. Gross,* for plaintiff.

*Robert G. Williamson,* for defendants.

O'BRIEN, *J.,* February 16, 1989—During the course of a public meeting held on May 17, 1988, the Borough Council of East Stroudsburg held an executive session from which the public, including a representative of plaintiff, The Morning Call Inc., was excluded. Following this closed meeting, Council reconvened the public meeting and proceeded to vote unanimously to have the borough manager handle the personnel matter discussed during executive session. Plaintiff's representative requested Council to disclose the personnel matters it had discussed in executive session but Council refused.

On May 27, 1988, the *Call* filed a complaint in equity against Council alleging that its closed executive session of May 17, 1988 was violative of the Sunshine Act. In its complaint, the *Call* sought declaratory and injunctive relief designed to prevent further violations of the Sunshine Act by defendant as well as the invalidation of any and all actions taken by council during the alleged illegal meeting. Council filed a responsive pleading on June 20, 1988 in which it denied the illegality of its executive session and asked this court to award it costs and

attorney's fees due to the spurious nature of plaintiff's claim. Following the production of documents and the deposition of East Stroudsburg Borough Manager Kenneth Robert Brown, the parties have filed cross-motions for summary judgment. Following the submission of briefs and argument before the court on February 6, 1989, the parties' motions are now ripe for disposition.*

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Laspino v. Rizzo*, 40 Pa. Commw. 625, 398 A.2d 1069 (1979); Pa.R.C.P. 1035. In the case at the bar, the facts are not disputed and counsel for both parties are in agreement that this dispute should be resolved by this court by summary judgment for either party.

The Sunshine Act, 65 P.S. §271 et seq., provides in pertinent part as follows:

"(a) *Findings* — The General Assembly finds that the right of the public to be present at all meetings of agencies and to witness the deliberation, policy formulation and decision-making of agencies is vital to the enhancement and proper functioning of the democratic process and that secrecy in public affairs undermines the faith of the public in govern-

---

*Council argues that the instant action is moot due to the resignation of the borough employee discussed during the executive session. We disagree. When the *Call* brought this action, the resignation had not been made public by Council. Further, our Supreme Court has held that the provisions of the Sunshine Act present situations that are capable of repetition and of sufficient public importance to require judicial attention even if no present controversy exists. *Consumer Education and Protective Association v. Nolan*, 470 Pa. 372, 368 A.2d 675 (1977).

ment and public's effectiveness in fulfilling its role in a democratic society."

"§273. *Definitions*

" '*Official action*'

"(1) Recommendations made by an agency pursuant to statute, ordinance or executive order.

"(2) The establishment of policy by an agency.

"(3) The decisions on agency business made by an agency.

"(4) The vote taken by any agency on any motion, proposal, resolution, rule, regulation, ordinance, report or order."

"§278. *Executive sessions*

"(a) *Purpose* — An agency may hold an executive session for one or more of the following reasons:

"(1) To discuss any matter involving the employment, appointment, termination of employment, terms and conditions of employment, evaluation of performance, promotion or disciplining of any specific prospective public officer or employee or current public officer or employee employed or appointed by the agency, or former public officer or employee, provided, however, that the individual employees or appointees whose rights could be adversely affected may request, in writing, that the matter or matters be discussed at an open meeting. The agency's decision to discuss such matters in executive session shall not serve to adversely affect the due process rights granted by law, including those granted by Title 2 of the Pennsylvania Consolidated Statutes (relating to administrative law and procedure)." 65 P.S. §278

In discussing Pennsylvania's original Sunshine Law, our Supreme Court stated:

"It is clear that the object of the Sunshine Law, enacted in 1974 at a time of wide-spread public dismay over the Watergate disclosures of extensive secret corruption and abuse of power at the highest

levels of the federal government, was to open the decision-making processes of Pennsylvania government to greater public scrutiny and accountability. It is also clear, however, that it was not the intention of the legislature that state agencies be required to hold all of their meetings in public; the Sunshine Law is entitled an act requiring public agencies to hold certain meetings and hearings open to the public and providing penalties. In order, therefore, to ascertain whether the meeting in question was covered, we must look to the language of the act and remain mindful that every statute shall be con-strued, if possible, to give effect to all its provisions." *Consumers Education and Protective Association v. Nolan,* 470 Pa. 372, 368 A.2d 675 (1977).

In order to make such a determination in the case at bar, an analysis of the matter discussed by Council is required. An employee had expressed displeasure at an ongoing conflict between himself and two of his co-workers. These complaints were accompanied by a request for early retirement. The employee was the subject of the executive session of Council at the May 17, 1988 meeting so that the borough manager could present his recommendations to Council. Following this meeting, the borough manager wrote a letter to the employee outlining his options. Receiving no response from the employee, Council accepted his resignation effective May 25, 1988.

The *Call* asserts that these acts by Council in executive session constituted the formation of policy and/or the taking of official action. We disagree. The only testimony of record as to what transpired at the executive session indicates that the borough manager was discussing a personnel matter with Council. The fact that no official action was taken during the meeting is evidenced by the content of the borough manager's letter of May 18, 1988. This

letter clearly indicated that the status of the employee was completely dependent upon his decision. The borough manager testified:

Q: Do you know why it needed confidentiality? Did anyone tell you why it needed confidentiality at that point?

A: First of all, in my opinion, it's a personnel matter, and I don't believe that any personnel matter needs to be discussed publicly unless you're hiring or firing someone. And I'm not even positive at that point in time that it's necessary. Personnel matter is exactly what it says.

Secondly, at this point in time at least in my opinion I wasn't sure if Mr. Predmore wanted to stay, and if he wanted to stay that was fine with me. I didn't care. I didn't want to have a newspaper article necessarily blow up and scare him off or make something more out of — add more pressure to what was already on Mr. Predmore quite frankly.

Q. And what was the pressure that was already on him as you inferred it?

A. Well, Mr. Predmore was having personnel problems between him and his — the other two employees. And I think he felt that he was being forced out. I believe that's truly how he felt. But I had told him many times if he wanted to come back and work until he was 70, I didn't care how long he worked.

In deciding the dispute in this case, a fundamental distinction must be made between the formulation of "policy by an agency" and the discussion of "any specific employee." Policy has been defined by Black's Law Dictionary in pertinent part as follows:

"The general principles by which a government is guided in its management of public affairs... this term, as applied to a law, ordinance, or rule of law denotes its general purpose or tendency considered

as directed to the welfare or prosperity of the state or community."

In contrast is the following definition by the same publication:

"*Personal* — Appertaining to the person; belonging to an individual; limited to the person; having the nature or partaking of the qualities of human beings."

While the right of the press to report policy discussions and decisions affecting the welfare of the entire community is paramount, the right of a specific employee to keep private discussions of his human qualities by his employer must be protected. The press has a right to report the actions of public bodies but not to dictate such actions by intermeddling in an employee's private affairs.

The decision we reach in the case at bar is consistent with the holdings of other courts in other controversies commenced by The Morning Call Inc. In *Mellin v. City of Allentown,* 60 Pa. Commw. 114, 430 A.2d 1048 (1981), the Commonwealth Court rejected the newspaper's claim under the Right to Know Act of June 21, 1957, P.L. 390, as amended, 65 P.S. §66.1 et seq.; the Open Meeting Law, Act of June 21, 1957, P.L. 392, as amended, 65 P.S. §251 et seq. (repealed) and the Sunshine Law that a discussion of allegations of misconduct by a police officer should have been open to the press. More recently, in *Stenger v. Lehigh Valley Hospital Center,* 47 D.&C. 3d 278 (1987), President Judge Backenstoe rejected the newspaper's request to have access to depositions in a civil case which would have disclosed the sexual conduct and habits and intimate details concerning personal hygiene of the participants in that litigation. Both of the foregoing decisions reflect the concern of the law to protect the "personal" without infringing upon the right of the press to publish "policy."

In the case at bar, it is clear that the purpose and substance of the May 17, 1988 executive session was the discussion of a personnel matter as permitted by 65 P.S. §278(a)(1). Therefore, the relief prayed for in plaintiff's complaint cannot be granted and summary judgment for defendants is appropriate. However, we decline the request of defendants to assess attorney's fees against plaintiff in this proceeding because we are not satisfied that plaintiff's attempt to enforce the Sunshine Law was in bad faith.

### ORDER

And now, February 16, 1989, it is ordered as follows:

(1) Defendants' motion for summary judgment is granted and judgment is entered in favor of the Council of the Borough of East Stroudsburg and all defendants and against plaintiff *The Morning Call.*

(2) Costs are assessed against plaintiff.