581 A.2d 684

**EASTON AREA JOINT SEWER AUTHORITY, Appellant,**

v.

**THE MORNING CALL, INC., Appellee.**

Commonwealth Court of Pennsylvania.

Argued April 3, 1990.

Decided Oct. 1, 1990.

---

Mark S. Refowich, Easton, for appellant.

Malcolm J. Gross, Gross, McGinley, LaBarre & Eaton, Allentown, for appellee.

Before McGINLEY and PELLEGRINI, JJ., and BARBIERI, Senior Judge.

McGINLEY, Judge.

The Easton Area Joint Sewer Authority (Authority) appeals a Northampton County common pleas court order enjoining Authority action that would violate the Sunshine Act,[1] and directing that a tape recording of the Authority's August 15, 1989 executive session be made available to the appellee, The Morning Call, Inc. (Morning Call). We affirm.

During the Authority's duly-advertised open meeting on August 15, 1988, one member, Fred Williams, moved to adjourn the meeting into executive session to discuss a personnel matter. When, after some time, the Authority members reconvened at the open meeting, Williams introduced a resolution to terminate Thomas Goldsmith's contract as the Authority's wastewater treatment consultant. The resolution was adopted. Goldsmith, who attended the meeting, was not aware of the resolution until it was introduced.

The Morning Call brought an action seeking a declaration that the Authority violated the Sunshine Act. It also sought release of the executive session tape recording pursuant to the same statute and the so-called "Right to Know Act."[2]

1. Act of July 3, 1986, P.L. 388, No. 84, 65 P.S. §§ 271—286.
2. Act of June 21, 1957, P.L. 390, as amended, 65 P.S. §§ 66.1—66.4. Section 2 of the Act, 65 P.S. § 66.2 which directs that every public record shall be open for examination and inspection to Commonwealth citizens.

The common pleas court found that Goldsmith was a consultant to the Authority, not an employee. It concluded on the basis of this finding that Section 8(a)(1) of the Sunshine Act, authorizing agencies to hold executive sessions for discussion of matters involving employees and public officers, therefore did not apply. It also concluded that the Right to Know Act contained no prohibition against the disclosure of the executive session tape.

On appeal, the Authority raises the following issues: (1) whether the common pleas court erred in concluding that a Sunshine Act violation had occurred because the Authority in closed, executive session discussed the termination of Goldsmith, who is not an "employee or public officer" as that term is used in the Sunshine Act; (2) whether the court erred in concluding that the Right to Know Act does not require that the tape recording remain under seal and (3) whether release of the tape to The Morning Call is an appropriate remedy under the Sunshine Act. We shall address each question *seriatim.*

### I. *Sunshine Act Violation*

█ Section 8(a)(1) of the Sunshine Act provides that an agency may hold a closed, executive session

[t]o discuss any matter involving the employment, appointment, terms and conditions of employment, evaluation of performance, promotion or disciplining of any specific prospective public officer or employee or current public officer or employee employed or appointed by the agency, or former public officer or employee, provided, however, that the individual employees or appointees whose rights could be adversely affected may request, in writing, that the matter or matters be discussed at an open meeting....

Section 8(c) requires that all official action on matters discussed at an executive session take place at an open meeting.

The common pleas court found as a fact that Williams moved for, and the Board agreed to, an executive session to

discuss "a personnel matter." Finding of Fact No. 2, slip op. at p. 2, 4/28/89. The court concluded that Goldsmith was a consultant, not an employee to whom the Sunshine Act's provision for executive sessions applied.

The Authority argues that it is too literal an interpretation of the term to conclude that Goldsmith's relationship with the Authority was one of an independent consultant and not employee.

The question of whether a contracting consultant is an employee or public officer as those terms are used in Section 8(a)(1) of the Sunshine Act has not been considered by this Court before.

In different contexts, however, our Supreme Court has held that a township solicitor is not a "public employee" or "public official" for purposes of financial disclosure under the "Ethics Act" [3] but closely resembles a consultant. *Ballou v. State Ethics Commission*, 496 Pa. 127, 436 A.2d 186 (1981). Following *Ballou*, this Court held that a certified public accountant appointed as a municipal auditor is not a public employee or official under the same statute. *Rogers v. State Ethics Commission*, 80 Pa.Commonwealth Ct. 43, 470 A.2d 1120 (1984). Subsequently, in *Maunus v. State Ethics Commission*, 518 Pa. 592, 544 A.2d 1324 (1988), our Supreme Court held state agency attorneys *were* employees under that Act. For purposes of membership in the Public School Employes' Retirement system, the Supreme Court stated that a school district physician was not an employee but an independent contractor. *Zimmerman v. Commonwealth, Public School Employes' Retirement Board*, 513 Pa. 560, 522 A.2d 43 (1987).

In each case, however, the governing statute contains express definitions of public employee, official or officer.[4]

---

3. Act of October 4, 1978, P.L. 883, 65 P.S. §§ 401–413.

4. Of course, in the area of workmen's compensation law, our Court has had many occasions to analyze the relationship between claimants and the employers or clients. There, "course of employment" is defined. Act of March 29, 1972, P.L. 159, 77 P.S. § 411.

Indeed, in the Ethics Act, independent contractor is separately defined.

No definition of public employee or officer is contained in the Sunshine Act, which we are here called upon to interpret. We find guidance, however in *Hammermill Paper Co. v. Rust Engineering Co.*, 430 Pa. 365, 243 A.2d 389 (1968), cited with approval by our Supreme Court in *Zimmerman*. The analysis for determining the difference between an employee and independent contractor consists in considering

> [c]ontrol of manner work is to be done; responsibility for result only; terms of agreement between parties; the nature of work or occupation; skill required for performance; whether one employed is. engaged in a distinct occupation or business; which party supplied the tools; whether payment is by time or by the job; whether work is part of the regular business of the employer and also the right to terminate the employment at any time.

*Hammermill Paper*, 430 Pa. at 370, 243 A.2d at 392.

While no one factor of this standard is dispositive, *Zimmerman*, the trial court was correct to conclude that Goldsmith was not a public employee or officer. The Authority admitted in Request for Admissions made prior to the hearing that Goldsmith served as a consultant. Goldsmith's contract with the Authority was entitled "Consulting Agreement." Authority Exhibit A. The common pleas court placed much emphasis, we think rightly, on Paragraph Nine of the Agreement: "It is understood and agreed that consultant is an independent contractor and is not considered an employee of [the Authority]." Goldsmith's contract clearly limited the Authority's ability to remove him from his position, suggesting that he was not an employee, as that term is commonly used, who could be terminated at the will of the employer. Moreover, Goldsmith's duties as a wastewater treatment consultant required specialized knowledge and skills.

■ Even construing the Sunshine Act so broadly as to include Goldsmith, a consultant, in the category of public employee or officer, we still find no error in the court's conclusion that a Sunshine Act violation occurred. The record indicates, and the court found, that Goldsmith had no knowledge of the Authority's intentions until the resolution was introduced and approved at the reconvened public meeting.

Section 8(a)(1) requires that "the individual employees or appointees whose rights could be adversely affected may request, in writing, that the matter or matters be discussed at an open meeting." Section 8 of the Sunshine Act, 65 P.S. § 278(a)(1). The record reveals that Goldsmith was not given this opportunity.[5] The Authority repaired to an executive session with the announcement of a "personnel matter." It reconvened after its executive session and immediately voted on the termination resolution.

Accordingly, we conclude that the common pleas court was correct in its determination that a Sunshine Act violation had occurred.

## II. *Right To Know Act*

■ The Authority argues that the Right to Know Act, prohibits disclosure of the executive session tape because it contains "communication ... the publication of which would disclose the investigation undertaken by an agency in the performance of its official duties ... which would operate to the prejudice or impairment of a person's reputation...." Such communications are expressly excluded from the definition of public record in this statute. Section 1 of the Right To Know Act, 65 P.S. § 66.1(2). We disagree with the Authority that disclosure of the tape is prohibited by this statutory provision.

---

**5.** The Authority disingenuously argues that Goldsmith has never formally made a request for discussion of his termination at an open meeting. Yet, when asked to release the tape recording of deliberations on that very subject, the Authority has refused. It is of no use to say that Goldsmith has yet to request that his contract termination be discussed at an open meeting when the first announcement of the matter was the vote which made it *fait accompli.*

First, the record supports the common pleas court's finding that the tape would not disclose the institution or progress of "an investigation undertaken by an agency in the performance of its official duties." *Id.*

Williams testified that he undertook on his own to investigate possible misdoings by Goldsmith, without any Authority action or authorization. Indeed, Authority members testified that they were unaware of the Goldsmith termination resolution until it was read at the executive session immediately before reconvening the public meeting. The common pleas court was correct in its conclusion that the Authority did not undertake, in performance of its official duties, an investigation of Goldsmith.

Second, we perceive no error in the trial court's conclusion the executive session tape would not operate to prejudice or impair Goldsmith's reputation. Most noteworthy is that Goldsmith has asked for release of the tape. The Authority can certainly claim no privilege or personal interest for Goldsmith himself. This fact alone materially distinguishes this case from *Mellin v. City of Allentown*, 60 Pa.Commonwealth Ct. 114, 430 A.2d 1048 (1981) where an employee participating in his own formal disciplinary proceeding resisted disclosure of the proceeding's minutes.

The Authority maintains that it made the public aware of what took place at the executive session and only the "factual details in support" of Goldsmith's dismissal were kept private. On the contrary, given that Goldsmith has sought release of the tape, the unanswered allegation of fraud and misconduct resulting from one Authority member's informal probe and Goldsmith's abrupt dismissal immediately thereafter may indeed be prejudicial to his reputation. What could be more prejudicial to a person's reputation than the lack of opportunity to challenge allegations made against him?

We agree that there exists no Right To Know Act prohibition against release of the executive session tape.

### III. *Propriety of the Remedy*

 Section 16 of the Sunshine Act confers to the common pleas courts original jurisdiction over actions involving municipal and local agencies and enables them to enforce the Act "by injunction or other remedy deemed appropriate by the court." Section 13 of the Sunshine Act provides that the court may in its discretion declare "all official action taken at the meeting ... invalid," if it should determine a violation has occurred. Section 13 of the Sunshine Act, 65 P.S. § 283.

The Authority would have us hold that, because it in good faith attempted to comply with Section 8(b) of the Sunshine Act by reading Goldsmith's termination resolution immediately after the executive session, when the open meeting reconvened, the common pleas court exceeded the bounds of its discretion by ordering release of the tape.

Three factors compel us to reject this argument. First, the General Assembly's declared findings acknowledge "the right of the public to be present ... to witness the deliberation, policy formulations and decision making of agencies...." Section 2 of the Sunshine Act, 65 P.S. § 272(a).

Second, the express purpose of the Act is "to insure the right of citizens to have notice of and the right to attend all meetings of agencies at which *any* agency business is discussed ..." Section 2 of the Sunshine Act, 65 P.S. § 272(b) (emphasis added). These findings and declarations do not in any way limit the right of the public to have advance knowledge of, and to witness agency business or underlying deliberations. Certainly, no "good faith" exception can be read into the statute.

Finally, the only exceptions to open meeting are working auditor sessions, Section 7 of the Sunshine Act, 65 P.S. § 277(c); conferences where no deliberation of agency business may occur, Section 7 of the Sunshine Act, 65 P.S. § 277(b); and executive sessions, discussed herein, where an agency may *admit those persons necessary to carry*

*out the purpose of the meeting.* Section 3 of the Sunshine Act, 65 P.S. § 273 (emphasis added).

It was well within the court's discretion to order release of the executive session tape when the Authority failed to admit the very person necessary to carry out the purpose of that session—i.e., deliberation on the termination of Goldsmith's contract for alleged misdeeds.

Having found that the common pleas court correctly determined that a Sunshine Act violation occurred, that no prohibition against release of the tape is found in the Right to Know Act, and that the court properly exercised its discretion in directing the tape's release, we accordingly affirm its order.

## ORDER

The Final Decree of the Northampton County Common Pleas Court at No.1988 C.E. 6528, dated June 23, 1989, is affirmed.