281 F.3d 1324
 AGG ENTERPRISES, Oregon corporation, Plaintiff-Appellee,
United States of America, Intervenor,
v.
WASHINGTON COUNTY; City of Beaverton, Defendants,
Pride Disposal Co.; Swatco Sanitary Service Inc.; United Disposal Service Inc.; Hillsboro Garbage Disposal Inc.; Washington County Drop Box Service Inc.; West Beaverton Sanitary Service Inc., Intervenors, and
Oregon Refuse & Recycling Association, Defendant-Intervenor-Appellant.
AGG Enterprises, Oregon corporation, Plaintiff-Appellee,
v.
Washington County; City of Beaverton, Defendants,
Pride Disposal Co.; Swatco Sanitary Service Inc.; United Disposal Service Inc.; Hillsboro Garbage Disposal Inc.; Washington County Drop Box Service Inc.; West Beaverton Sanitary Service Inc.; Aloha Garbage & Recycling Inc.; Don's Garbage Service; Garbarino Disposal & Recycling Service Inc., Intervenors-Appellants,
Oregon Refuse & Recycling Association, Defendant-Intervenor.
AGG Enterprises, Oregon corporation, Plaintiff-Appellee,
United States of America, Intervenor,
v.
Washington County, Defendant-Appellant, and
City of Beaverton, Defendant,
Pride Disposal Co.; Swatco Sanitary Service Inc.; United Disposal Service Inc.; Hillsboro Garbage Disposal Inc.; Washington County Drop Box Service Inc.; West Beaverton Sanitary Service Inc.; Aloha Garbage & Recycling Inc.; Don's Garbage Service; Garbarino Disposal & Recycling Service Inc., Intervenors,
Oregon Refuse & Recycling Association, Defendant-Intervenor.
AGG Enterprises, Oregon corporation, Plaintiff-Appellee,
v.
Washington County, Defendant,
Oregon Refuse & Recycling Association, Defendant-Intervenor.
Pride Disposal Co.; Swatco Sanitary Service Inc.; United Disposal Service Inc.; Hillsboro Garbage Disposal Inc.; Washington County Drop Box Service Inc.; West Beaverton Sanitary Service Inc.; Aloha Garbage & Recycling Inc.; Don's Garbage Service; Garbarino Disposal & Recycling Service Inc., Intervenors,
and
City Of Beaverton, Defendant-Appellant.
 No. 00-35449.
 No. 00-35511.
 No. 00-35509.
 No. 00-35510.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted November 5, 2001.
 Filed March 12, 2002.
 
 Dan R. Olsen, Washington County Counsel, Hillsboro, OR, and Williams J. Scheiderich, City Attorney's Office, Beaverton, OR, for the defendants-appellants.
 Barnes H. Ellis, James N. Westwood, Stephen A. Redshaw, Stoel Rives LLP, G. Frank Hammond, Cable Huston Benedict Haagensen & Lloyd LLP, Edward J. Sullivan, James R. Herald, Preston Gates & Ellis LLP, Portland, OR, for intervenors-appellants and defendant-intervenor-appellant.
 Lawrence R. Davidson, Jeffrey M. Batchelor and Paul Bierly, Markowitz, Herbold, Glade & Mehlhaf, P.C., Portland, OR, for plaintiff-appellee.
 Mark B. Stern, Dana J. Martin, Department of Justice Civil Division, Washington, DC, for intervenor.
 Jay W. Beattie, Lindsay, Hart, Neil & Weigler, LLP, Portland, OR, John Douglas Moore, Henn, Etzel and Moore, Inc., Oakland, CA, Robert B. Rocklin, Assistant Attorney General, Salem, OR, Scott M. DuBoff, Wright & Talisman, P.C., Washington, DC, Richard E. Norris, Mark S. Coon, and John L. Kortum, Archer Norris, Richmond, CA, Vicki W.W. Lai, Yarmuth Wilsdon Calfo PLLC, Seattle, WA, John Kelly Astor, Astor & Phillips, John J. Welsh, Burke, Williams & Sorenen, LLP, Los Angeles, CA, James K. Sells, Silverdale, WA, Todd E. Thompson, Howard, Rice, Nemerovski, Canady, Falk & Rabkin, San Francisco, CA, for amici curiae.
 Appeal from the United States District Court for the District of Oregon; Garr M. King, District Judge, Presiding.
 Before HUG, T.G. NELSON and GOULD, Circuit Judges.
 OPINION
 GOULD, Circuit Judge.
 
 OVERVIEW
 
 1
 Defendants-Appellants City of Beaverton and Washington County, Oregon appeal the district court's entry of a permanent injunction preventing them from enforcing their trash-hauling regulations against plaintiff-appellee AGG Enterprises ("AGG"). AGG collects and disposes of loads of construction materials-mixed solid waste containing part recyclables and part non-recyclables — from its nonresidential customers. Defendants consider mixed solid waste the same as regular garbage or refuse, and they want AGG to be subject to their trash-hauling regulations.
 
 
 2
 AGG sued defendants for injunctive relief from those regulations in the district court, claiming that local trash-hauling regulations were preempted by a provision in the Federal Aviation Administration Authorizing Act of 1994 ("FAAAA"), 49 U.S.C. § 14501(c), that preempted state regulation of motor carriers transporting property. The district court granted a permanent injunction.
 
 
 3
 Defendants claim that the district court erred because Congress did not intend for mixed solid waste to be considered "property," and therefore the local regulations are not preempted. We agree, reverse the district court, and vacate the permanent injunction.
 
 FACTUAL BACKGROUND
 
 4
 Plaintiff-appellee AGG Enterprises, Inc. ("AGG") is a waste removal service with operations in Oregon, Idaho, and Washington. AGG contracts with customers at commercial, industrial, and construction sites to collect materials such as brick, glass, tile, concrete, wood, cardboard, plastic, and metal. AGG's intra-Oregon services are at issue.
 
 
 5
 AGG handles two types of trash loads: recyclables presorted by customers ("source sorted"), and unsorted loads of non-recyclable, dry garbage mixed with recyclables ("mixed solid waste" or "MSW"). Only the MSW loads are at issue.
 
 
 6
 After AGG picks up the MSW loads from its customers, it delivers the loads to East County Recycling ("ECR"), a material recovery facility. ECR separates recyclables, recycles them, and hauls non-recyclables to a landfill. Neither AGG nor any AGG customer receives a rebate for the recyclable portion of a mixed solid waste load. According to AGG, customers with high labor costs find it cost-effective to have AGG pick up their mixed solid waste loads rather than to sort the recyclables themselves. AGG claims that the government-licensed trash haulers available to these customers will not take MSW to a recycling center such as ECR. AGG suggests that these customers rely on AGG to meet recycling commitments.
 
 
 7
 AGG does not know exactly how much of a customer's load is recyclable. AGG brings almost all its loads to ECR. ECR collects 60,000 tons of MSW per year, and claims that it recycles 50% to 60% of that. The owner of ECR stated that "he played with the numbers" one time to try to take into account the concrete and asphalt recycling from the MSW, and that brought the recycling rate up to 80% to 90%. Under the most extreme view, on average at least 10% to 20% of each load is garbage that is not recyclable.
 
 
 8
 Defendants-appellants Washington County and City of Beaverton ("Beaverton") regulate trash collection through the use of exclusive franchises. Both issue licenses or certificates granting exclusive authority to collect waste in one of 35 geographical areas. Under both systems, the exclusive franchisee provides residential and commercial collection. Neither defendant regulates source sorted recyclables. Businesses and persons may haul waste they generate, without a license or certificate.
 
 
 9
 AGG does not hold an exclusive license. As a result, Beaverton cited AGG for unauthorized collection of solid waste, a violation with a maximum fine of $250. AGG then applied for a license from the City of Beaverton. After Beaverton informed AGG it would not take further action on AGG's licensing application, AGG brought suit for injunctive relief in the district court.[1]
 
 
 10
 The district court found that plaintiff was a "motor carrier" transporting "property" and that the Federal Aviation administration Authorizing Act of 1994 ("FAAAA") preempted the defendants' exclusive licensing schemes. The district court granted plaintiff the permanent injunction, and defendants and intervenors appealed.[2]
 
 DISCUSSION
 I. Standard of Review
 
 11
 We review de novo the district court's decision regarding preemption. See Nathan Kimmel, Inc. v. DowElanco, 275 F.3d 1199, 1203 (9th Cir.2002). We review de novo the district court's interpretation and construction of the FAAAA. See Rowe v. Laidlaw Transit, Inc., 244 F.3d 1115, 1117 (9th Cir.2001).
 
 II. Language of the Statute
 
 12
 Under the Supremacy Clause of the Constitution, federal law is the "supreme Law of the Land." U.S. Const. art. VI. Federal law overrides any conflicting state or local law. See Pacific Gas and Electric Co. v. State Energy Resources Conservation & Development Commission, 461 U.S. 190, 204, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983). Federal preemption "may be either express or implied, and `is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.'" Branco v. UFCW Northern-California Employers Joint Pension Plan, No. 00-15884, 2002 WL 200910, at *2 (9th Cir. Feb.11, 2002) (quoting Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977)). We must decide whether the FAAAA preempts local entities from regulating the collection of MSW loads.
 
 
 13
 Preemption analysis begins with the "presumption that Congress does not intend to supplant state law." New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 654, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). Also, "in cases ... where federal law is said to bar state action in fields of traditional state regulation, we have worked on the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Id. at 655, 115 S.Ct. 1671 (internal citations omitted). Although Congress clearly intended the FAAAA to preempt some state regulations, we consider this "presumption against the pre-emption of state police power regulations" when we analyze the scope of the preemption. Medtronic, Inc. v. Lohr, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996).
 
 
 14
 Congress has recognized that waste hauling is a traditional state and local function subject to state regulation. See 42 U.S.C. § 6901(a)(4) (stating that "the collection and disposal of solid waste should continue to be primarily the function of State, Regional and local agencies"). Our precedent has recognized the strong local governmental interest in regulating garbage collection. Kleenwell Biohazard Waste and General Ecology Consultants, Inc. v. Nelson, 48 F.3d 391, 398 (9th Cir.1995). One could hardly imagine an area of regulation that has been considered to be more intrinsically local in nature than collection of garbage and refuse, upon which may rest the health, safety, and aesthetic well-being of the community. See generally California Reduction Co. v. Sanitary Reduction Works of San Francisco, 199 U.S. 306, 318, 26 S.Ct. 100, 50 L.Ed. 204 (1905); Kleenwell, 48 F.3d at 398. The historic responsibility of local governments to ensure safe and comprehensive garbage collection posts a strong caution against the possibility that Congress lightly would preempt local regulation in this field.
 
 
 15
 Our inquiry under Blue Cross, and in light of this cautionary history, is whether it was the "clear and manifest" intention of Congress to preempt local regulation of the collection of loads containing part recyclable materials and part non-recyclables. 514 U.S. at 655, 115 S.Ct. 1671.
 
 
 16
 We previously have held that the FAAAA's preemption of regulation of the collection of mixed solid waste is not "readily apparent." See Woodfeathers, Inc. v. Washington County, Oregon, 180 F.3d 1017, 1022 (9th Cir.1999). Woodfeathers was a case about Younger abstention, and when we held that preemption was not "readily apparent," we were deciding only that FAAAA preemption of MSW regulation was an unsettled issue. See id. at 1021-22. We pick up now where we left off in Woodfeathers to decide the issue we there stated was undecided.
 
 
 17
 To determine Congress' intent on preemption, we begin with the "text of the provision in question, and move on, as need be, to the structure and purpose of the Act in which it occurs." Blue Cross, 514 U.S. at 655, 115 S.Ct. 1671. Section 601(c) of the FAAAA provides:
 
 
 18
 (c) Motor carriers of property. —
 
 
 19
 (1) General Rule. — Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier ... or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.
 
 
 20
 49 U.S.C. § 14501(c). "Property" is the operative word for Our analysis, but Congress did not define the term. Nor is the meaning of "property" perfectly clear from the context of the statute. So, to interpret this statute in accord with Congress' intent, it is appropriate that we look beyond the text of the statute to determine Congress' purpose in enacting this statute.
 
 III. Legislative History
 
 21
 Legislative history shows that the major purpose of the FAAAA preemption clause was to "level the playing field between air carriers on the one hand and motor carriers on the other with respect to intrastate economic trucking regulation...." H.R. Conf. Rep. No. 103-677, at 82 (1994), reprinted in 1994 U.S.C.C.A.N. 1715, 1754. Congress was concerned that package delivery companies organized as "motor carriers," such as UPS, were subject to state regulation, whereas companies organized as "air carriers," such as Federal Express, were free from state regulation. See id. Although this shows Congress had an intent different than preempting state regulation of solid waste collection, it does not settle the issue, because Congress may have had more than one purpose.
 
 
 22
 Other legislative history gives insight into the intent of Congress on the scope of preemption and regulation of solid waste collection:
 
 
 23
 The conferees further clarify that the motor carrier preemption provision does not preempt State regulation of garbage and refuse collectors. The managers have been informed by the Department of Transportation that under ICC case law, garbage and refuse are not considered `property.' Thus garbage collectors are not considered `motor carriers of property' and are thus unaffected by this provision.
 
 
 24
 H.R. Conf. Rep. No. 103-677, at 85 (1994), reprinted in 1994 U.S.C.C.A.N. 1715, 1757. We said in dicta in Woodfeathers that the force of this piece of legislative history was debatable because the Interstate Commerce Commission ("ICC") case law, which Congress was told did not consider garbage and refuse "property," is equivocal as to whether it could be "property" or not. 180 F.3d at 1022. However, it is irrelevant in our present analysis whether or not ICC case law is equivocal. We are not concerned with what ICC case law says, but with what Congress intended in its statute and at most with what Congress thought ICC case law said. That is what shows us whether Congress had a "clear and manifest" intent to preempt state regulation of the collection of MSW loads. This legislative history is important, because it shows that if Congress exhibited any clear intent, it was an intent not to preempt state and local regulation of solid waste collectors. Even if Congress was misinformed as to what ICC case law held, it believed that the statute it was passing would not affect local regulation of garbage and refuse collection.
 
 
 25
 AGG offers no other contrary legislative history to show an intent by Congress to preempt local waste collection laws.[3] Instead, AGG claims that the legislative history does not hurt its case. AGG argues that ICC case law considers MSW loads "property," and that therefore MSW is not "garbage and refuse," and is unaffected by the legislative history.
 
 
 26
 We decline AGG's invitation delicately to parse the holdings of several ICC cases in combination. As stated above, we need not scrutinize ICC case law. About 40% to 50% of the MSW loads taken by AGG is non-recyclable garbage and must be taken to a landfill. Even under the highest proposed recycle rate, when the recycling center "played with the numbers," an average of 10% to 20% of the MSW load was non-recyclable. So it is undebatable that at least ten to twenty percent of everything AGG collects, thousands of tons, is "garbage and refuse." This is a lot of garbage, and we cannot accept the argument that Congress precluded local government entities from regulating its collection. Absent a "clear and manifest" purpose, if not an explicit instruction, from Congress, we decline to divest states and local governments of this area of regulation, crucial to health and safety. To the contrary, Congress' intent not to preempt the area of solid waste collection is unambiguous.
 
 
 27
 Our decision is consistent with a persuasive decision of the California Court of Appeal that parallels this case. See Pleasant Hill Bayshore Disposal, Inc. v. Chip-It Recycling, Inc., 91 Cal.App.4th 678, 110 Cal.Rptr.2d 708, 714 (2001). That court ruled that the FAAAA does not preempt local regulation of the collection of MSW loads. We agree with that court that "[i]t verges on the inconceivable that Congress had such an intent. There is nothing in the language or legislative history of [§ 601(c) of the FAAAA] giving the least credence to [the MSW hauler's] claim that Congress intended to make itself the sole authority in a field where local authority has been traditionally accepted as preeminent." Id. at 717.
 
 
 28
 We conclude that Congress did not show a "clear and manifest" intent to end state and local regulation of garbage and refuse collection merely because the load includes some recyclable material. That the load includes a significant amount of garbage is sufficient to permit local regulation.[4]
 
 CONCLUSION
 
 29
 We hold that the FAAAA does not preempt local regulation of the collection of mixed solid waste. We reverse the district court's decision, vacate the permanent injunction, and remand for further proceedings consistent with this opinion.
 
 
 30
 REVERSED, VACATED, and REMANDED.
 
 
 
 Notes:
 
 
 [1]
 Several hauling companies with exclusive licenses from Beaverton and Washington County intervened on the side of the defendants
 
 
 [2]
 The United States of America intervened as of right on appeal to defend the FAAAA against a claim by defendants that the FAAAA, if preemptive of trash-hauling regulation, violates the Commerce Clause. We do not reach that issue in view of our conclusion below that the FAAAA did not preempt the power of local jurisdictions to regulate garbage collection
 
 
 [3]
 AGG presents a few comments from members of Congress on a failed technical corrections billSee, e.g., 140 Cong. Rec. E1830-02 (daily ed. Sept. 12, 1994) (statement of Rep. Cantwell). The comments declare that curbside recycling should be considered the same as garbage and refuse, in that the FAAAA should have no preemptive effect on such regulation. AGG tries to parlay these comments to show that while curbside recycling was meant to be the same as garbage and refuse, MSW should be considered "property." We do not subscribe to AGG's interpretation for whatever weight these post-enactment comments might be worth.
 
 
 [4]
 We express no opinion whether Congress intended to preempt regulation of source separated recyclables