BILL LOCKYER Attorney General DANIEL G. STONE Deputy Attorney General.
THE HONORABLE DENNIS MARSHALL, COUNTY COUNSEL, COUNTY OF FRESNO, has requested an opinion on the following questions:
1. May a county grant to solid waste haulers an exclusive right to provide collection services within designated service areas, and set maximum rates for the services in such areas?
2. Is a county board of supervisors required to provide members of the public with an opportunity to address the board before action is taken to create exclusive service areas and set maximum rates for collection services as part of the county's solid waste collection program?
3. Are members of the public entitled to attend and participate in meetings between county staff employees and solid waste haulers in which proposals for exclusive service areas and maximum rates for collection services will be developed and considered as part of the county's solid waste collection program?
 CONCLUSIONS
1. A county may grant to solid waste haulers an exclusive right to provide collection services within designated service areas, and may set maximum rates for the services in such areas.
2. A county board of supervisors is required to provide members of the public with an opportunity to address the board before action is taken to create exclusive service areas and set maximum rates for collection services as part of the county's solid waste collection program.
3. Members of the public are not entitled to attend or participate in meetings between county staff employees and solid waste haulers in which proposals for exclusive service areas and maximum rates for collection services will be developed and considered as part of the county's solid waste collection program.
 ANALYSIS
We are asked three questions that address the authority of local government agencies to govern solid waste collection programs within their jurisdictions and the extent to which the public is entitled to observe and participate in such local decisions.
Before addressing each question individually, we note generally that the Constitution expressly authorizes cities and counties to adopt and enforce local rules and standards governing sanitation collection services "not in conflict with general laws." Article XI, section 7, of the Constitution provides:
 "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."
The Legislature has enacted "general laws" with respect to sanitation collection services, assigning specific powers and responsibilities to counties and other local agencies. These statutes are primarily set forth in the California Integrated Waste Management Act of 1989 (Pub. Resources Code, §§ 40000-49620; "Act"),[1] which is administered by the California Integrated Waste Management Board (§§ 40400-40510).[2] The legislative goals of the Act are described in section 40052:
 "The purpose of this division is to reduce, recycle, and reuse solid waste generated in the state to the maximum extent feasible in an efficient and cost-effective manner to conserve water, energy and other natural resources, to protect the environment, to improve regulation of existing solid waste landfills, to ensure that new solid waste landfills are environmentally sound, to improve permitting procedures for solid waste management facilities, and to specify the responsibilities of local governments to develop and implement integrated waste management programs."
Under the Act, solid waste collection services may be provided by a local agency itself, by a sister agency, by a private contractor, or by any combination of these entities. (§ 40058.) Section 40059 states:
 "(a) Notwithstanding any other provision of law, each county, city, district, or other local governmental agency may determine all of the following:
 "(1) Aspects of solid waste handling which are of local concern, including, but not limited to, frequency of collection, means of collection and transportation, level of services, charges and fees, and nature, location, and extent of providing solid waste handling services.
 "(2) Whether the services are to be provided by means of nonexclusive franchise, contract, license, permit, or otherwise, either with or without competitive bidding, or if, in the opinion of its governing body, the public health, safety, and well-being so require, by partially exclusive or wholly exclusive franchise, contract, license, permit, or otherwise, either with or without competitive bidding. The authority to provide solid waste handling services may be granted under terms and conditions prescribed by the governing body of the local governmental agency by resolution or ordinance.
 "(b) Nothing in this division modifies or abrogates in any manner either of the following:
 "(1) Any franchise previously granted or extended by any county or other local governmental agency.
 "(2) Any contract, license, or any permit to collect solid waste previously granted or extended by a city, county, or a city and county."
With these specific provisions of the Act in mind, we turn to the three questions presented for resolution.
1. Designating Exclusive Collection Service Areas
The first question concerns whether a county may lawfully establish exclusive service areas for its solid waste collection program — that is, areas in which only one service provider would be authorized to make collections — and whether the county may set maximum rates for the collection services conducted in such service areas. We conclude that counties are authorized to create such exclusive service areas and impose a ceiling on the rates that may be charged for the collection services.
The counties' statutory authority to regulate sanitation collection services is provided in section 40059, quoted above. With respect to granting exclusive franchises, subdivision (a)(2) of the statute expressly permits counties to determine whether solid waste collection services "are to be provided . . . by partially exclusive or wholly exclusive franchise, contract, license, permit, or otherwise, either with or without competitive bidding," and such exclusive rights "may be granted under terms and conditions prescribed by the governing body of the local governmental agency by resolution or ordinance." With respect to designating collection areas and setting maximum collection fees, subdivision (a)(2) of section 40059 also expressly allows each county to determine the "level of services, charges and fees, and nature, location, and extent of providing solid waste handling services."
We believe that this wide-ranging authority permits a county, in its discretion, to designate different service areas within its jurisdiction and set maximum rates for collection services. (See Waste Management ofthe Desert v. Palm Springs Recycling Center, Inc. (1994) 7 Cal.4th 478,481 [Act authorizes granting of "exclusive franchises for solid waste handling services "]; Valley Vista Services, Inc. v. City of MontereyPark (2004) 118 Cal.App.4th 881, 884 [under Act, "local agencies are allowed to grant exclusive operating rights to solid waste disposal companies"]; Waste Resource Technologies v. Department of PublicHealth (1994) 23 Cal.App.4th 299, 305-309 [Act does not preempt local governments' power to grant exclusive refuse collection permits]; see also AGG Enterprises v. Washington County (9th Cir. 2002) 281 F.3d 1324,1328-1330 [county's exclusive collection franchise not preempted by federal statute precluding local regulation of motor carriers' transportation of property]; Pleasant Hill Bayshore Disposal, Inc. v.Chip-It Recycling, Inc. (2001) 91 Cal.App.4th 678, 683-695 [same];Waste Management of Alameda County, Inc. v. Biagini Waste ReductionSystems, Inc. (1998) 63 Cal.App.4th 1488, 1495-1500 [exclusive solid waste collection franchise does not violate federal commerce clause or dormant commerce clause doctrine.])
Accordingly, we conclude in answer to the first question that a county may grant to solid waste haulers an exclusive right to provide collection services within designated service areas, and may set maximum rates for the services in such areas.
2. The Public's Presentation of Testimony
The second question presented concerns whether a county must provide members of the public with advance notice and an opportunity to be heard before it establishes exclusive service areas or sets maximum collection rates as part of the county's solid waste collection program. We conclude that a county must allow such public participation before taking action.
The Ralph M. Brown Act (Gov. Code, §§ 54950-54962; "Brown Act") generally requires that legislative bodies of local agencies conduct their business in open and public sessions. (See Shapiro v. Board ofDirectors (2005) 134 Cal.App.4th 170, 179; Chaffee v. San FranciscoLibrary Commission (2004) 115 Cal.App.4th 461, 468-469;International Longshoremen's Warehousemen's Union v. Los AngelesExport Terminal, Inc. (1999) 69 Cal.App.4th 287, 293.) Government Code section 54953, subdivision (a), provides:
 "All meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency, except as otherwise provided in this chapter."
A county of board of supervisors is a "legislative body of a local agency" for purposes of the Brown Act. (See Gov. Code, §§ 23005, 54951,54952, subd. (a)); 216 Sutter Bay Associates v. County of Sutter (1997)58 Cal.App.4th 860, 876-878; Sacramento Newspaper Guild v. SacramentoCounty Bd. of Suprs. (1968) 263 Cal.App.2d 41, 45;79 Ops.Cal.Atty.Gen. 124, 126 (1996).)
Further, the board's deliberations and determinations that are at issue here — concerning whether and to what extent it will designate solid waste service areas, enter exclusive franchise agreements for solid waste collection, and set maximum collection fees — are the types of decisions which are subject to the Brown Act's requirements. (SeeLindelli v. Town of San Anselmo (2003) 111 Cal.App.4th 1099, 1113
[county's granting of waste management franchise is legislative act];84 Ops.Cal.Atty.Gen. 30, 30-31 (2001).)
While the Legislature has authorized the holding of closed sessions in specified circumstances (Gov. Code, §§ 54956.7-54957.8), no exception applies here. (See Gov. Code, § 54962; Rowen v. Santa Clara UnifiedSchool Dist. (1981) 121 Cal.App.3d 231, 235.)
With respect to the opportunity of the public to address the board regarding the solid waste collection proposals being considered, Government Code section 54954.3 provides:
 "(a) Every agenda for regular meetings shall provide an opportunity for members of the public to directly address the legislative body on any item of interest to the public, before or during the legislative body's consideration of the item, that is within the subject matter jurisdiction of the legislative body. . . .
 "(b) The legislative body of a local agency may adopt reasonable regulations to ensure that the intent of subdivision (a) is carried out, including, but not limited to, regulations limiting the total amount of time allocated for public testimony on particular issues and for each individual speaker.
 "(c) The legislative body of a local agency shall not prohibit public criticism of the policies, procedures, programs, or services of the agency, or of the acts or omissions of the legislative body. Nothing in this subdivision shall confer any privilege or protection for expression beyond that otherwise provided by law."
Accordingly, the Brown Act not only allows members of the public to attend the board's meetings, it also allows the public to participate in the decision-making process by presenting testimony to the board. (See78 Ops.Cal.Atty.Gen. 224 (1995); 75 Ops.Cal.Atty.Gen. 89 (1992).)
We conclude in answer to the second question that a county board of supervisors must provide members of the public with notice and an opportunity to address the board before action is taken to create exclusive service areas and set maximum rates for collection services as part of the county's solid waste collection program.
3. Staff Meetings with Potential Haulers
The final question concerns whether the "open meeting" requirements of the Brown Act extend to meetings between county staff members and representatives of solid waste haulers at which ideas are exchanged regarding possible boundaries for exclusive service areas and possible methods for establishing the rates for collection services. Any proposals formulated at these meetings would be presented to and reviewed by the board of supervisors for formal approval and adoption at an open and noticed meeting. Under these circumstances, we conclude that members of the public would not be entitled to attend or participate in the staff's preliminary meetings held with representatives of potential solid waste haulers.
The Brown Act broadly defines the term "meetings" to include "any congregation of a majority of the members of a legislative body at the same time and place to hear, discuss, or deliberate upon any item that is within the subject matter jurisdiction of the legislative body. . . ." (Gov. Code, § 54952.2, subd. (a).) A "legislative body" is likewise broadly defined to include "[a] commission, committee, board, or other body of a local agency, whether permanent or temporary, decision making or advisory, created by charter, ordinance, resolution, or formal action of a legislative body." (Gov. Code, § 54952, subd. (b).)
Nevertheless, these broad definitions do not encompass the kinds of meetings described here, involving staff employees and potential solid waste haulers, in which no member of the board of supervisors will be present and where no decision-making authority has been delegated to those in attendance. The county employees in question do not act as a subsidiary board or commission or a standing committee of the board of supervisors. Instead, their task is to meet with interested parties, compile information about a specific problem, consider possible alternatives, and formulate proposals for the board's consideration.
Hence, in terms of the Brown Act, an essential factor is missing in these meetings: the staff members do not constitute a "legislative body of a local agency" within the meaning of Government Code section 54953. (Cf. 80 Ops.Cal.Atty.Gen. 270, 273-274 (1997).)[3]
However, if any proposals are developed at these meetings for consideration by the board, members of the public will have an opportunity to review the proposals, monitor the board's deliberations, and address the board before any action is taken, as discussed in answer to the second question.
We conclude that members of the public are not entitled to attend or participate in meetings between county staff employees and solid waste haulers in which proposals for exclusive service areas and maximum rates for collection services will be developed and considered as part of the county's solid waste collection program.
[1] All references hereafter to the Public Resources Code are by section number only. 
[2] The state board's regulations, adopted pursuant to section 40502, are contained in title 14 of the California Code of Regulations, sections 17000 through 18932.
[3] We assume for our purposes that the staff members will not meet serially with individual supervisors to develop a collective concurrence in proposals that will later be presented to the board. The Brown Act prohibits the members of a legislative body from engaging in a series of communications, each involving less than a quorum of the body, which, when taken together, includes a majority of the body's members. (SeeStockton Newspapers, Inc. v. Redevelopment Agency (1985)171 Cal.App.3d 95, 102-104; 84 Ops.Cal.Atty.Gen. 30, 31-33 (2001);65 Ops.Cal.Atty.Gen. 63, 64-66 (1982); 63 Ops.Cal.Atty.Gen. 820, 827-829.) Government Code section 54952.2, subdivision (b), thus provides:
 "Except as authorized pursuant to Section 54953 [permitting teleconferences under specified conditions], any use of direct communication, personal intermediaries, or technological devices that is employed by a majority of the members of the legislative body to develop a collective concurrence as to action to be taken on an item by the members of the legislative body is prohibited."