Carl R. Mellin, Paul Lowe and Call-Chronicle Newspapers, Inc., for themselves and all other citizens and taxpayers of the City of Allentown, Appellants *v.* The City of Allentown et al., Appellees.

Argued March 6, 1981, before Judges BLATT, CRAIG and WILLIAMS, JR., sitting as a panel of three.

*William S. Hudders, Butz, Hudders & Tallman,* for appellants.

*Michael P. McIntyre, Majczan, Heidecker & McIntyre,* with him *Jack I. Kaufman,* Assistant City Solicitor, for appellees.

OPINION BY JUDGE BLATT, June 19, 1981:

The appellants, Call-Chronicle Newspapers, Inc., operate a newspaper serving the City of Allentown. They and Carl T. Mellin and Paul Lowe, individual taxpapers residing in Allentown, appeal from an or-

der of the Court of Common Pleas of Lehigh County dismissing their complaint against several members of the Allentown City Council[1] and the Allentown city clerk.[2]

Injunctive relief was sought to declare invalid the suspension of an Allentown police officer on the grounds that the evidence leading to his suspension was obtained at a secret hearing of the city council which was improperly closed to the public. It was also sought to compel the city clerk to produce the transcript of the closed hearing for public inspection.

The facts as found by the court below are undisputed. Donald G. Oswald, an Allentown police officer, was indefinitely suspended from duty on June 15, 1976 because of alleged instances of conduct unbecoming a policeman. The council scheduled an executive session to be held on July 22, 1976 to hear the charges brought against the police officer, and the police officer requested, prior to the meeting, that the hearing be conducted in private. The council president then directed that the hearing be closed to the public, although no formal vote of the council was taken on the subject. The private session lasted for four hours, during which time several witnesses testified concerning the alleged misconduct. On August 18, 1976, at a duly advertised open meeting, the council formally adopted a resolution of suspension.

In their action in equity before the lower court, the appellants argued that: 1) the hearing could not legally be closed because the Third Class City Code[3]

---

[1] The following city council members were named as defendants and are the appellees herein: Samuel G. Costa, Watson W. Shinner, Jr., Karl L. Kercher, Thelma W. Barnes, Alton W. Frey, Jr. and Benjamin F. Howells, Jr.

[2] Charles S. Saeger.

[3] Act of June 23, 1931, P.L. 932, *as amended*, 53 P.S. §36001 *et seq.*

and Allentown ordinances require all council meetings to be open to the public; 2) the city clerk cannot refuse public access to the transcripts of the hearings; and, 3) even if the city council can hold closed "executive sessions", such sessions may not last longer than one-half hour. The lower court ruled against the appellants on each issue and this appeal followed. We will affirm.

Several statutes are relevant to the determination of whether or not the city council session was required to be open to the public and whether or not the record of that session is required to be open to public inspection.

The Open Meeting Law, Act of June 21, 1957, P.L. 392, *as amended,* 65 P.S. §251 *et seq.,* requires that certain governmental meetings be open to the public. Those which must be open are termed "public meetings" and are defined as follows:

> That part of any meeting of a board during which it votes upon any ordinance, resolution, motion or other official action proposed by or to the board dealing with the receipt, borrowing or disbursement of funds or the acquisition, use or disposal of services or of any supplies, materials, equipment or other property or the fixing of personal or property rights, privileges, immunities, duties or obligations of any person or group of persons: *Provided, That the term 'Public Meeting' shall not mean any meeting, the publication of the facts concerning which would disclose the institution, progress or result of an investigation undertaken by a board in the performance of its official duties.*
> (Emphasis added.)

Section 1(B) of the Open Meeting Law, 65 P.S. §251 (B). The disciplinary hearing in this case, which

concerned alleged misconduct by a police officer, clearly falls under the specific exclusion, emphasized above for meetings which would disclose the institution, progress or result of an official investigation by a public body. The hearing, therefore, was not required to be open to the public under the Open Meeting Law.

Similarly, the Right to Know Act, Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §66.1 *et seq.,* which delineates those reports and records of governmental meetings which must be open to public inspection, contains an exclusion from its definition of "public record" for certain confidential documents. Section 1(2) of the Right to Know Act, 66 P.S. §66.1(2), defines "public record" as follows:

Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or decision, by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons: *Provided, That the term 'public records' shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties,* except those reports filed by agencies pertaining to safety and health in industrial plants; it shall not include any record, document, material, exhibit, pleading, report, memorandum or other paper, access to or the publication of which is prohibited, restricted or forbidden by statute law or order or decree of court, *or which would operate to the prejudice or impairment of a per-*

*son's reputation* or personal security, or which would result in the loss by the Commonwealth or any of its political subdivisions or commissions or State or municipal authorities of Federal funds, excepting therefrom however the record of any conviction for any criminal act. (Emphasis added.)

It is again clear that the transcript of the disciplinary proceeding involved here falls under the exclusions from the definition of "public record" for official investigations and for documents which would operate to the prejudice of a person's reputation.

The appellants contend, however, that the provisions for public meetings and records contained in the Open Meeting Law and in the Right to Know Law are preempted by the Third Class City Code, and by Allentown ordinances, which require that city council meetings and records be open. Section 1005 of the Third Class City Code, 53 P.S. §36005, provides:

The council shall hold stated meetings at least once in each month, and at such other times as may be fixed by ordinance, and continue them so long as the transaction of the public business demands. The mayor may . . . call special meetings. . . . *All meeting of council, whether regular or special, shall be open to the public.* (Emphasis added.)

Section 1008 of the Third Class City Code, which pertains to public records, requires that "[t]he council shall keep a journal of its proceedings, which shall be in the possession of the city clerk, and which *shall at all times be open to public inspection.*" 53 P.S. §36008.

While we recognize that the Third Class City Code contains no exclusions from its provisions governing open meetings and records, we believe that, because the Third Class City Code relates to the same classes

of persons and events as do the Open Meeting Law and the Right to Know Law, the statutes stand in pari materia and must be construed as one. Section 1932 of the Statutory Construction Act of 1972, Act of December 6, 1972, P.L. 1339, 1 Pa. C. S. §1932. In *Marvel v. Dalrymple,* 38 Pa. Commonwealth Ct. 67, 393 A.2d 494 (1978), for example, wherein a township employee who was denied a promotion sought to inspect the civil service examination papers of other examinees pursuant to provisions of the First Class Township Code[4] which specifically permit public access to township examination records, we held that the township was not required to open its records because the First Class Township Code incorporates by implication the exclusion in the Right to Know Law for records which would operate to prejudice another person's reputation.

Just as in *Marvel v. Dalrymple, supra,* a pari materia construction of the statutes involved here requires that the broad provisions for open meetings and records contained in the Third Class City Code incorporate by implication the exclusions from the definition of "public meeting" in the Open Meeting Law and the exclusions from the definition of "public record" contained in the Right to Know Law. As a result, the disciplinary hearing here was properly closed to the public by the city council and the record of the hearing was properly removed from public scrutiny by the city clerk.

The appellants argue further that Allentown City Ordinance No. 115.03(b), which specifically requires that "[a]ll meetings of Council shall be open to the public . . ." is controlling because it is specifically applicable to the governmental body at issue whereas

---

[4] Section 631 of the First Class Township Code, Act of June 24, 1931, P.L. 1206, *as amended,* 53 P.S. §55631.

the state statutes are of general application. The city ordinance, however, simply restates the language of Section 1008 of the Third Class City Code and, because it does not contain a more specific definition of the term "meeting" than does the Third Class City Code, the ordinance must be construed in connection with the Third Class City Law, to which it is subordinate and from which it derives its force. *See Appeal of Neshaminy Auto Villa, Ltd.*, 25 Pa. Commonwealth Ct. 129, 358 A.2d 433 (1976); *Erie v. Paskett*, 14 Pa. Superior Ct. 400 (1900). And, because the Third Class City Law incorporates the exclusion of the Open Meeting Law for meetings which operate to prejudice a person's reputation, the language of the city ordinance must also be understood to incorporate that exclusion.

As to the appellants' contention that the city council was prohibited under Section 3 of the Act of July 19, 1974, P.L. 486, 65 P.S. §263 (colloquially known as the "Sunshine Law"), from holding a closed session lasting longer than thirty minutes, it is true that Section 3 of the Sunshine Law provides:

No public meeting of any agency shall be adjourned, begun, recessed or interrupted in any way for the purpose of an executive session except as hereinafter provided. An executive session may be held during the course of a properly constituted public meeting upon notification to the public present by the presiding officer that *for a period not to exceed thirty minutes* the meeting will be in recess for the purpose of:

(1) Considering dismissal or disciplining of, or hearing complaints or charges brought against a public elected officer, employee, or other public agent unless such person requests a public hearing.

(2) Considering actions of the deliberating body with respect to labor negotiations. (Emphasis added.)

It is also true that, although the cases are replete with instances where executive sessions were held independent of a public meeting,[5] we are unable to find any direct precedent for or against the appellants' position here, and it is clear that Section 3 of the Sunshine Law authorizes the interruption of public meetings for the holding of executive sessions and that it requires that such executive sessions shall not exceed 30 minutes in length. This time limitation, however, simply acts to prevent unlimited adjournments during public meetings so as to avoid inconvenience for persons attending such meetings. It does not mandate that all executive sessions be held during an interlude of a public meeting or that any time limitation apply to executive sessions which are held independent of a public meeting. We believe, therefore, that *all* executive sessions need not be less than 30 minutes in length, except for those called during the course of public meetings.

The appellants' final contention is that the court below improperly impounded the transcript of the July 22, 1976 executive session pending the court's resolution as to whether or not the transcript was a public record. We believe, however, that this action was proper, for an allegation that a matter is confidential under the Right to Know Law is clearly sufficient to prevent discovery until after the matter of confidentiality is resolved. *See e.g.,* Pa. R.C.P. No. 4011(c); *McMullan v. Wohlgemuth,* 444 Pa. 563, 281 A.2d 836 (1971).

---

[5] *Judge v. Pocius,* 28 Pa. Commonwealth Ct. 139, 367 A.2d 788 (1977); *Redmond v. Pennsylvania Milk Marketing Board,* 26 Pa. Commonwealth Ct. 368, 363 A.2d 840 (1976).

We will therefore affirm the order of the court of common pleas.

### ORDER

AND Now, this 19th day of June, 1981, the order of the Court of Common Pleas of Lehigh County in the above-captioned case is affirmed.

Judge WILKINSON, JR. did not participate in the decision in this case.