**NORTHERN TIER SOLID WASTE AUTHORITY, d/b/a Bradford County Landfill, McKean County Solid Waste Authority, Clinton County Solid Waste Authority, d/b/a Wayne Township Landfill, Petitioners**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF REVENUE; Larry P. Williams, Secretary of the Department of Revenue; Commonwealth of Pennsylvania, Department of Environmental Protection; Kathleen A. McGinty, Secretary of the Department of Environmental Protection; Commonwealth of Pennsylvania, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Sept. 9, 2004.
Decided Nov. 5, 2004.

Charles E. Gutshall and Kenneth L. Joel, Harrisburg, for petitioners.

Daniel J. Doyle, Harrisburg, for respondents.

Wilson M. Brown, III, Philadelphia, for intervenor, PA Waste Industries Association.

BEFORE: PELLEGRINI, Judge, SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SIMPSON.

For the third time we address this original jurisdiction suit by three municipal solid waste authorities [1] (Authorities) challenging the solid waste disposal fee imposed in Section 2 of Act 2002–90 (Act 90),[2] a statute recently added to the codified environmental resources laws. The current expedited argument involves Authorities' second application for summary relief seeking a declaration of exemption from the waste disposal fee and an injunction against collection. Also, the Respondent Commonwealth parties [3] and the Intervenor, Pennsylvania Waste Industries Association (PWIA), each seek summary

judgment declaring that Authorities are subject to the waste disposal fee.

Section 2 of Act 90 [4] imposes a disposal fee of $4.00/ton on all waste disposed at Pennsylvania municipal waste landfills. The Authorities contended they are not subject to this tax primarily based on the tax exemption granted to municipal authorities pursuant to Section 5620 of the Municipality Authorities Act (Authorities Act).[5] Authorities also raise constitutional protections against the fee. The Commonwealth parties and PWIA contend the Authorities are subject to the fee.

We first addressed the issues in *Northern Tier Solid Waste Auth. v. Common-*

1. Northern Tier Solid Waste Authority, d/b/a Bradford County Landfill (Northern Tier), McKean County Solid Waste Authority (McKean), and Clinton County Solid Waste Authority, d/b/a Wayne Township Landfill (Clinton) (collectively, Authorities) are Petitioners in the action.

2. 27 Pa.C.S. §§ 4101–4113, 6201–6306. Sections 6201–6306 are known as the Waste Transportation Safety Act, 27 Pa.C.S. §§ 6201–6306.

3. The Commonwealth of Pennsylvania, the Department of Revenue and its Secretary, and the Department of Environmental Protection and its Secretary (Commonwealth parties) are Respondents.

4. Section 2 of Act 90, titled **Disposal fee for municipal waste landfills,** provides at 27 Pa. C.S. § 6301(a):

Imposition. Except as otherwise provided in subsection (b), each operator of a municipal waste landfill shall pay, in the same manner prescribed in Chapter 7 of the act of July 27, 1988 (P.L. 566, No. 101), known as the Municipal Waste Planning, Recycling and Waste Reduction Act, a disposal fee of $4 per ton for all solid waste disposed of at the municipal waste landfill. The fee established in this section shall apply to process residue and nonprocessible waste from a resource recovery facility that is disposed of at the municipal waste landfill and is in addition to the fee established in section

701 of the Municipal Waste Planning, Recycling and Waste Reduction Act.

5. Act of June 19, 2001, P.L. 287, Municipality Authorities Act, 53 Pa.C.S. §§ 5601–5622. Section 5620, titled **Exemption from taxation and payments in lieu of taxes,** provides at 53 Pa.C.S. § 5620:

The effectuation of the authorized purposes of authorities created under this chapter shall be for the benefit of the people of this Commonwealth, for the increase of their commerce and prosperity and for the improvement of their health and living conditions. Since authorities will be performing essential governmental functions in effectuating these purposes, authorities shall not be required to pay taxes or assessments upon property acquired or used by them for such purposes. Whenever in excess of 10% of the land area of any political subdivision in a sixth, seventh, or eighth class county has been taken for a waterworks, water supply works or water distribution system having a source of water within a political subdivision which is not provided with water service by the authority, in lieu of such taxes or special assessments the authority may agree to make payments in the county to the taxing authorities of any or all of the political subdivisions where any land has been taken. The bonds issued by any authority, their transfer and the income from the bonds, including any profits made on their sale, shall be free from taxation within the Commonwealth.

*wealth,* 825 A.2d 793 (Pa.Cmwlth.2003) (*Northern Tier I* ). At that time, an *en banc* panel overruled preliminary objections in the nature of demurrers filed by the Commonwealth parties. Thereafter, the Authorities brought their first application for summary relief, seeking to apply our holding on preliminary objections to final disposition. Another *en banc* panel denied this request in a memorandum opinion. *Northern Tier Solid Waste Auth. v. Commonwealth* (*Northern Tier II* ).[6] The Court determined Authorities' right to judgment was not clear.

### Count I—Tax Exemption under Authorities Act

At the heart of the controversy, Authorities assert a statutory exemption from tax in Count I of their petition for review. The claim is restated in their motion for summary relief currently before us. Commonwealth parties and PWIA also seek summary judgment in their favor on that claim.

### A.

### 1.

The Authorities assert they are municipal corporations entitled to tax exemption as provided by the Authorities Act. Over time, the Authorities acquired real estate on which landfill operations occur pursuant to permits issued by one of the Respondents, the Department of Environmental Protection (DEP). Waste is accepted from haulers and placed in a landfill, filling airspace. The waste is covered daily. Once the airspace is fully used, a landfill is capped, and disposal activities cease. The Authorities use the solid waste to generate revenues supporting their business operations.

In addition to extensive deposition testimony describing their operations, the Authorities rely heavily on our decision in *Northern Tier I* to support two arguments: waste is tangible property of value acquired and used by them within the meaning of the statutory tax exemption; and, the General Assembly did not clearly express the intent to tax municipal authority operations. They also rely on an older Pennsylvania case[7] and cases from other jurisdictions[8] holding that waste is property in the context of public carriers.

The Authorities contend the disposal fee is a tax despite its designation as a "fee." They make a four part argument. First, the charge was enacted by the legislature. Second, it is imposed on many, or similarly situated citizens. Third, it raises money. Fourth, the money is used to benefit the general public and the Commonwealth,

---

**6.** Order of October 7, 2003, 876 M.D.2002.

**7.** *Masgai v. Public Serv. Comm'n,* 124 Pa.Super. 370, 188 A. 599 (1936) (waste is property in the context of a fine issued to a public carrier for failure to maintain a certificate of public convenience).

**8.** *A.G.G. Enterprises, Inc. v. Washington County,* 281 F.3d 1324 (9th Cir.2002) (mixed solid waste not property under Federal Aviation Administration Authorization Act and thus Act's preemption clause did not reach city's and county's regulation of the waste); *National Serv–All, Inc. v. Indiana Dep't of State Rev.,* 644 N.E.2d 954 (Ind.Tax.Ct.1994) (waste is property owned by waste hauler prior to disposal and is subject to gross receipt retail tax); *Railroad Comm'n of Texas v. Waste Management of Texas,* 880 S.W.2d 835 (Tex.App.1994) (waste is property, regardless of value, subjecting hauler to railroad commission jurisdiction as property is transported); *Northern Hills Sanitation, Inc. v. Cossart,* 264 N.W.2d 711 (S.D.1978) (solid waste is property regardless of economic value within meaning of statute requiring registration of vehicles engaged in carrying property); *Browning–Ferris, Inc. v. Commonwealth of Virginia,* 225 Va. 157, 300 S.E.2d 603 (1983) (same).

and its use is not restricted to waste disposal programs. The Authorities rely on several cases generally defining a tax.[9]

Finally, anticipating the argument that the charge does not violate the statutory tax exemption because it may be passed through to the waste generators, the Authorities emphasize that the legal incidence of the charge falls on the collector of the charge. The Authorities rely on several federal cases.[10]

### 2.

The Commonwealth parties assert the plain language of Act 90 does not exempt the Authorities because the fee is on the disposal of solid waste, not on the solid waste itself. Act 90 states municipal waste operators shall pay "a disposal fee of $4.00 per ton for all solid waste disposed of at the municipal landfill." 27 Pa.C.S. § 6301(a). To interpret this language as the Authorities advocate ignores the word "disposal" and disregards several rules of statutory construction.

Referencing the Pennsylvania Realty Transfer Tax,[11] parking taxes,[12] and amusement taxes,[13] they contend the fee is on the transaction of disposal, not on the waste disposed. The fee is calculated on how much waste is disposed. The waste is therefore a unit of measurement, and it is not the subject of the charge.

Also, the Commonwealth parties assert that by calling the charge a "fee" the legislature demonstrated its intention that the charge be treated as a fee. This Court should ascertain the legislative intent by the plain language employed, and treat the charge as a fee, not as a tax violating the Authorities Act tax exemption.[14]

### 3.

PWIA contends that by necessary implication the legislature intended for the Act 90 fee to apply to the disposal of solid waste at all municipal landfills. PWIA refers to similar statutes in support: the

---

**9.** *Woodward v. Philadelphia,* 333 Pa. 80, 3 A.2d 167 (1938); *City of Philadelphia v. Pa. Pub. Util. Comm'n,* 676 A.2d 1298 (Pa. Cmwlth.1996).

**10.** *Arizona Dep't of Revenue v. Blaze Constr. Co., Inc.,* 526 U.S. 32, 119 S.Ct. 957, 143 L.Ed.2d 27 (1999); *United States v. State of Delaware,* 958 F.2d 555 (3d Cir.1992).

**11.** 72 P.S. §§ 8101–C—8113–C. See *Wilson Partners, L.P. v. Commonwealth,* 723 A.2d 1079 (Pa.Cmwlth.1999), aff'd, 558 Pa. 462, 737 A.2d 1215 (1999), *cert. denied,* 528 U.S. 1159, 120 S.Ct. 1171, 145 L.Ed.2d 1080 (2000).

**12.** *Capitol Assoc. v. Sch. Dist. of City of Harrisburg,* 684 A.2d 1119 (Pa.Cmwlth.1996) (parking tax deemed to be tax on transaction of parking, not on the parking lot property).

**13.** *Township of South Park v. County of Allegheny,* 163 Pa.Cmwlth. 273, 641 A.2d 20 (1994) (upholding amusement tax for activity conducted on county property).

**14.** Supplementing their "plain meaning" argument, the Commonwealth parties also raise contentions based on statutory construction. They argue that reading the Authorities Act tax exemption in *pari materia* with other laws pertaining to municipal authority landfills leads to the conclusion that the General Assembly intended facilities and equipment used in the disposal of waste to be the property qualifying for tax exemption, not the waste itself.

Also, the Commonwealth parties point to several consequences which militate against the interpretation urged by Authorities. First, the fee would realize far less revenue than expected. Second, solid waste generated by some people or entities would be subject to the fee and some would not. Worse, some of the waste accepted by Authority landfills is generated out of state. These out-of-state generators would not be subject to paying their part of the fee, whereas most Pennsylvanians would have to pay. Commonwealth parties ask us to consider these consequences and apply principles of statutory construction.

Municipal Waste Planning, Recycling and Waste Reduction Act (Act 101),[15] which imposes a $2.00/ton recycling fee on the disposal of solid waste at municipal waste landfills; and, the Environmental Stewardship and Watershed Protection Act (Act 68),[16] which imposes a $0.25/ton fee on all solid waste received at such landfills.

PWIA contends the legislature intended the Act 90 fee to operate like the preexisting Act 101 and Act 68 fees. It notes the Authorities collected and remitted these other fees for years without objection. Also, it is reasonable that all disposal of municipal waste would be subject to the same fees, whether the disposal occurred at a publicly-or privately-owned landfill. Of statutory significance, in its imposition provisions Act 90 references Act 101, and Act 101 expressly applies to municipal authorities.

In addition, PWIA urges deference to the interpretation of a statute made by an administering agency, noting DEP considers waste disposed at authority landfills subject to Act 90 fees.

Relying on *Capitol Assocs. v. School Dist. of City of Harrisburg,* 684 A.2d 1119 (Pa.Cmwlth.1996) (parking tax collected by parking lot owners from drivers upheld), PWIA argues the charge is a tax on waste generators, not on landfills. In support they reference the charge pass-through provisions and the Authorities' conduct with Act 101 and Act 68 fees.

Finally, PWIA contends the fee's triggering event is a transaction, disposal. As in *Capitol Assocs.,* the transaction fee is permissible. It is not a charge on property.

**4.**

The Authorities respond to these arguments by reminding us that the General Assembly could have clearly expressed its intent to tax municipal authorities, but, as we concluded in *Northern Tier I,* it did not do so. Also, they argue statutes other than Act 90 are not controlling. Further, Authorities distinguish *Capitol Assocs.*

**B.**

At the current stage of this litigation, we are favored for the first time with an extensive record. Based on that record and on new arguments regarding related statutes, we deny the Authorities' motion for summary judgment on Count I, and we grant summary judgment to the Commonwealth parties and PWIA on Count I.

**1.**

A motion for summary relief is treated the same as a motion for summary judgment. *Northern Tier II.* Summary relief may be granted if a party's right to judgment is clear and no issues of material fact are in dispute. *Id.*

**2.**

The current record contains significant information on similar, pre-existing statutes, past practice under those statutes and practice under Act 90.

As to similar, pre-existing statutes, Act 101 was enacted in 1988 and imposes a fee on solid waste disposal. Without question, the fee applies to waste disposed at landfills operated by municipal authorities. Thus, Act 101 states that its fee "shall be

---

**15.** Act of July 28, 1988, P.L. 556, *as amended,* 53 P.S. §§ 4000.101–4000.1904 (Act 101). Section 701 of Act 101, 53 P.S. § 4000.701(a), imposes a $2.00/ton recycling fee on the disposal of solid waste at municipal waste landfill.

**16.** 27 Pa.C.S. §§ 6101–6113 (Act 68). Section 6112(b) of Act 68 imposes a $0.25/ton fee on all solid waste received at municipal waste landfills. 27 Pa.C.S. § 6112(b).

paid by the operator of each municipal waste landfill and resource recovery facility." [17] Under the definitions found in Act 101, "operator" is "a person engaged in solid waste processing or disposal," and "person" is further defined to specifically include "municipal authorit[ies]." [18]

Also in 1988, another enactment imposed on each "operator" of a municipal waste landfill an additional fee of $0.25/ton on all solid waste received at the landfills. Although originally dedicated to another fund, this fee was rededicated in 1999 through Act 68 to the newly adopted Environmental Stewardship Fund.[19] Act 68 requires that each "operator" pay the fee "in the same manner as prescribed in section 701 of [Act 101]." [20] The term "operator" is not further defined in Act 68.

As to past practice under those statutes, it is undisputed that Authorities here collect and remit the fees imposed under both Act 101 and Act 68 without objection. Also, the Authorities pass through those fees to their customers.[21] Further, both the industry and DEP understand that the fees are passed through by landfill operators to waste transporters and, ultimately, to generators.[22]

In 2002 Act 90 joined Act 101 and Act 68 as part of a fifteen year series of related levies on disposal activities at Pennsylvania municipal waste landfills. The relevant similarities of the statutes are noteworthy. As with the other charges, the Act 90 fee is to be paid by "each operator" of a municipal waste landfill "in the same manner prescribed in Chapter 7 of [Act 101]. . . ." 27 Pa.C.S. § 6301(a). As with Act 68, "operator" is not defined in Act 90; rather, it is defined by reference to the first statute on the subject, Act 101. Also, those collecting the Act 90 fee "may pass through and collect the fee" from any transporter in accordance with section 705 of [Act 101]. . . ." 27 Pa.C.S. § 6303(a). The fee may be further passed on to the generator "in accordance with section 705 of [Act 101]. . . ." 27 Pa.C.S. § 6303(b). Finally, similar to Act 68, much of the Act 90 collections are paid into the Environmental Stewardship Fund.[23]

Practice under Act 90 is the same for all practical purposes as practice under the pre-existing statutes. Thus, the Authorities are collecting and remitting the Act 90 disposal fees to DEP.[24] Moreover, the Authorities are passing through those charges to their customers.[25] DEP does

---

17. Section 701 of Act 101, *as amended*, 53 P.S. § 4000.701(a).

18. Section 103 of Act 101, *as amended*, 53 P.S. § 4000.103.

19. Section 1 of Act 68, 27 Pa.C.S. § 6104.

20. Section 1 of Act 68, 27 Pa.C.S. § 6112(b).

21. Exhibit A of PWIA, Deposition of Jay B. Alexander (Clinton General Manager), 1/28/04 (Alexander Dep.) at 40–41; Exhibit G of PWIA, Deposition of David T. Terrill, Jr. (Northern Tier Executive Director), 1/27/04 (Terrill Dep.) at 113, 117, 148. For a short time after imposition, some fees were not collected, but this was a voluntary business decision which was quickly abandoned. *Id.* at 28, 93, 111, 117, 148.

22. Exhibit E of PWIA, Deposition of William F. Pounds (Commonwealth designated witness), 1/6/04 at 98–99; Alexander Dep. at 40–41; Terrill Dep. at 28–29, 34.

23. Section 2 of Act 90, 27 Pa.C.S. § 6302(1).

24. Alexander Dep. at 45; Terrill Dep. at 28–29; Exhibit H of PWIA, Deposition of Richard F. Tygar, Sr. (designated witness for McKean), 1/28/04 at 18.

25. Clinton and McKean admit that each passes through all Act 90 fees to their customers. Northern Tier admits it passes through the Act 90 fee to those third-party transporters that deliver the waste. In three circumstances, however, it voluntarily chose not to pass through the fee. Terrill Dep. at 63–64, 69–70, 82, 84–85, 122–28, 133–40, 162, 177, 196.

not treat privately-owned municipal waste landfills differently from publicly-owned municipal waste landfills with respect to the collection or enforcement of any of the fees.[26]

## C.

The disposal fee imposition provision of Act 90 is ambiguous. The ambiguity arises from the Act's lack of definition of "operator" on whom initial payment is placed. We therefore consider rules of statutory construction.

Statutes or parts of statutes are in *pari materia* when they relate to the same persons or things or to the same classes of persons or things. 1 Pa.C.S. § 1932(a). Statutes in *pari materia* shall be construed together, if possible, as one statute. 1 Pa.C.S. § 1932(b).

 The fee imposition parts of the three statutes are in *pari materia.* We reach this conclusion from their subject matter and from the express incorporation of Act 101 into the other statutes' imposition provisions. We thus construe them together.

 We conclude that the "operator" on whom the fees are initially imposed is the same in all three statutes. Only one statute, Act 101, defines the term. In their imposition provisions, the other two statutes reference the imposition and collection provisions of Act 101. This conclusion is consistent with the rule for construing statutes in *pari materia.* It is also consistent with the rule that statutes are to be construed in harmony with the existing law and as part of a general and uniform system of jurisprudence. *In re Peplinski's Estate,* 155 Pa.Super. 564, 39 A.2d 271 (1944).

Under these circumstances, any construction that results in different imposition rules for municipal waste fees would be unreasonable. We presume the General Assembly did not intend an unreasonable result. 1 Pa.C.S. § 1922.

Moreover, under DEP's interpretation the imposition, collection and pass through provisions of all three statutes operate in the same manner and apply to all municipal waste landfills. This administrative interpretation may be considered in ascertaining legislative intent, 1 Pa.C.S. § 1921(c)(8), and it supports our conclusion.

## D.

Having concluded the General Assembly intended to impose the Act 90 disposal fee on all operators of municipal waste landfills, including municipal authorities, we now consider the impact of the tax exemption in the Authorities Act.

We need not decide here whether the disposal fee is a tax, and we need not decide whether the fee is imposed on the Authorities' property. Rather, we conclude that the legislative intent to include municipal authorities among the "operators" initially collecting the fee is necessarily implied, so as to overcome any presumption or general statute to the contrary.

## 1.

 In *Northern Tier I,* we relied upon a Supreme Court decision which described the analysis for a claim that a tax was intentionally imposed on a municipal body:

*We have many times said that while the state may, by a general statute, tax subordinate governmental agencies in matters affecting the performance of*

---

**26.** Pounds Dep. at 83, 85, 86.

*their governmental duties, the presumption is that this was not intended, and nothing short of an expressed or necessarily implied purpose to tax them will suffice to make them liable therefor.* The Legislature knew for it was bound to know, of our oft-repeated statement to that effect; hence its failure to express its intention to impose the tax, in the act under consideration, can only mean that it did not intend to impose it under the circumstances stated. That the presumption is as above expressed, so clearly appears in a number of cases … and is so well known, that it is not necessary to quote from them.

825 A.2d at 797, quoting *Commonwealth v. Pure Oil Co.*, 303 Pa. 112, 117–18, 154 A. 307, 309 (1931) (citations omitted) (emphasis added by *Pure Oil* Court). Thus, the Commonwealth enjoys the power to tax subordinate governmental agencies, but there is a presumption against such action. The presumption may be overcome where the legislative intent to so act is expressed or necessarily implied.

Assuming for present purposes only that the fee is a tax on Authorities' property, we must decide whether the General Assembly's intent to impose the Act 90 disposal fee on municipal authorities is expressed or necessarily implied so as to overcome the presumption. In *Northern Tier I* we concluded that the General Assembly's intent to impose the Act 90 disposal fee on municipal authorities was not expressed.

■ In *Northern Tier I*, however, we were constrained by the petition. We could not consider the broader landscape consisting of similar, pre-existing statutes, past practice under those statutes and current practice under Act 90. As previously described in detail, this broader landscape reveals the General Assembly's intent. Thus, considering the broader landscape,

the inescapable conclusion is that the General Assembly intended a uniform system of municipal waste fee imposition. In sum, the General Assembly's intent to impose the disposal fee on all operators of municipal waste landfills, including municipal authorities, is necessarily implied.

### 2.

As to the tax exemption found in the Authorities Act, the General Assembly's intent to overcome this general provision is also necessarily implied. We reach this conclusion for several reasons. First, as discussed, the Act 90 disposal fee is part of a system of related charges on disposal activities at Pennsylvania municipal waste landfills. For reasons previously stated, the General Assembly intended the imposition of the charges to be uniform.

Second, assuming that the Act 90 disposal fee is a tax on municipal authority property in conflict with the general proscription in the Authorities Act, rules of statutory construction require that the special disposal fee prevail. Whenever there is irreconcilable conflict between a general provision of a statute and a special provision in a later-enacted statute, "the special provisions shall prevail and shall be construed as an exception to the general provision. . . ." 1 Pa.C.S. § 1933; *Graybill & Bushong, Inc. v. Bd. of Finance and Revenue*, 414 Pa. 70, 198 A.2d 316 (1964). Here, the later-enacted special provision, the Act 90 disposal fee, shall prevail over any general exemption contained in the Authorities Act.

For all the foregoing reasons, we deny and dismiss the Authorities' motion for summary relief, and we grant the motions of the Commonwealth parties and PWIA, on Count I of the petition.

### Count III—Equal Protection/Due Process[27]

### Count IV—Non–Uniform Taxation

The Commonwealth parties seek summary judgment on these claims, which the other parties oppose.

#### A.

##### 1.

The Commonwealth parties posit reasons why the Act 90 charge is placed on disposal of waste at municipal waste landfills but not at incinerators, construction and demolition landfills and residual waste landfills.

##### 2.

The Authorities ask that we not reach these issues now, for three reasons. First, more discovery may be needed. Second, we should avoid deciding a case on constitutional grounds where possible. Third, the explanations offered by the Commonwealth parties do not constitute a rational basis for distinction.

##### 3.

PWIA argues these constitutional issues are not ripe for decision. If the Authorities do not prevail on their current motion, further discovery on the extent of discrimination will be needed.

#### B.

■ Authorities and PWIA argue summary judgment on Counts III and IV is premature because discovery is ongoing. "Summary judgment may be entered prior to the completion of discovery in matters where additional discovery would not aid in the establishment of any material fact." *Manzetti v. Mercy Hosp. of Pittsburgh,*

565 Pa. 471, 492, 776 A.2d 938, 951 (2001). However, "summary judgment is to be entered only in the clearest of cases where there is not the slightest doubt as to the absence of a triable issue of material fact." *Granthum v. Textile Mach. Works,* 230 Pa.Super. 199, 326 A.2d 449, 451 (1974).

■ When a party is denied the opportunity for reasonable discovery, it is within this Court's discretion to deny summary judgment. *Kerns v. Methodist Hosp.,* 393 Pa.Super. 533, 574 A.2d 1068 (1990). In *Kerns,* the Superior Court noted:

> Parties must be given a reasonable period of time to pursue proper discovery, and if a summary judgment motion is filed prematurely, the trial court must grant a continuance if the opposing party specifies proper discovery to be sought in a timely manner. On the other hand, if an adequate time for discovery has already expired when a continuance is sought, the party opposing summary judgment must establish both materiality and due diligence with regard to the further discovery sought.

*Kerns,* 574 A.2d at 1074.

Considering the foregoing, we decline the invitation to enter summary judgment on these Counts, thereby affording Authorities a brief period for further discovery on these issues.

### Count V—Unconstitutional Impairment of Contracts

Count V of the petition for review asserts that the Authorities' rights to unimpaired contracts under Article I, Section 10 of the United States Constitution and Article I, Section 17 of the Pennsylvania Constitution are violated by the disposal fee.[28] In *Northern Tier I* we overruled a

---

27. Count II was withdrawn.

28. Article 1, Section 17 of the Pennsylvania Constitution provides, in relevant part, that

demurrer to this claim because the petition contains an averment that the Authorities were not able to pass through the Act 90 disposal fee to all their customers. We stated,

> Accepting these well pled averments as true, as we must for present purposes, Authorities arguably state a claim for unconstitutional impairment of certain contracts. Whether Authorities can ultimately muster proof to support this claim is a matter that we do not currently address.

*Northern Tier I,* 825 A.2d at 798. The Commonwealth parties and PWIA seek summary judgment on this claim now.

### A.

#### 1.

The Commonwealth parties contend there are no contracts which prevent Authorities from passing through the Act 90 disposal fee. Despite the Authorities' averment that they were not able to pass through the fee to all of their customers, they now concede the inaccuracy of this assertion.

#### 2.

PWIA contends the Authorities will never be able to muster proof in support of Count V because discovery disclosed they can and do pass through the Act 90 disposal fee to their customers.

#### 3.

Authorities argue a factual issue precludes decision on this issue. Relying on language in several cases, Authorities contend the constitutions protect the amount of business. Because discovery disclosed they lost customers after the Act 90 charge was imposed, they contend that

no law impairing the obligation of contracts shall be passed. Article I, Section 10 of the

they might be able to prove impairment with business relationships.

### B.

■ We now grant the motions for summary judgment on Count V of the petition. The only reason that we declined to sustain a demurrer to the claim was Authorities' averment of inability to pass through the Act 90 disposal fee. Discovery now shows Authorities' inability to muster proof supporting their averment.

In *Barwise v. Sheppard,* 299 U.S. 33, 57 S.Ct. 70, 81 L.Ed. 23 (1936), the United States Supreme Court rejected a claim that a tax on oil production unconstitutionally interfered with pre-existing leases. The Court held that provisions in the leases could not circumscribe the state's power to impose a tax, prescribe who shall pay it and fix the time and mode of payment. Accordingly, the Court concluded the United States Constitution did not prohibit the tax.

The contracts clause in the Pennsylvania Constitution was aimed at debtor relief legislation, often passed during times of economic distress. Ken Gormley, Jeffrey Bauman, Joel Fishman & Leslie Kozler, *The Pennsylvania Constitution: A Treatise on Rights and Liberties,* § 20.2(b) at 581 (2004). Currently, Pennsylvania courts adhere to the federal standard on the contracts clause and defer to legislative judgment, even if acts incidentally affect existing contractual obligations. *Empire Sanitary Landfill, Inc. v. Com., Dep't of Envitl. Resources,* 546 Pa. 315, 684 A.2d 1047 (1996). We therefore follow the reasoning of *Barwise* as to claims under the Pennsylvania Constitution.

Authorities cite *Fisk v. Police Jury of Jefferson,* 116 U.S. 131, 6 S.Ct. 329, 29

United States Constitution contains a similar prohibition.

L.Ed. 587 (1885) and *Lawrence County v. New Castle,* 18 Pa.Super. 313 (1901), for the proposition that the contracts clauses protect the amount of business. These cases do not support that contention. Both cases reference implied contracts, and neither case refers to business prospects which have not ripened into contracts.[29]

For the foregoing reasons, we grant summary judgment as to Count V in favor of the Commonwealth parties and PWIA.

As a result of our rulings, the only claims remaining are the constitutional claims embodied in Counts III and IV. Authorities are granted 90 days to complete any discovery on those issues.

### ORDER

AND NOW, this 5th day of November, 2004, it is Ordered and Decreed as follows: Petitioner's Motion for summary relief is **DENIED** and **DISMISSED.** Further, the Motions for summary judgment filed by Respondents and by Intervenor and **GRANTED in part** and **DENIED in part;** specifically, the Motions are GRANTED as to Counts I and V and DENIED as to Counts III and IV.

Petitioners are granted 90 days to complete discovery relating to Counts III and IV.

---

**29.** *Fisk,* involved a district attorney who completed his services. The United States Supreme Court held that once the services were rendered, a contract was implied, and payment could not be denied by legislative act. In *Lawrence County,* the Superior Court held the contracts clause protected contracts implied in fact as well as express contracts. The Court concluded that neither an express contract nor an implied contract existed which would support recovery by the county. Clearly, neither case supports Authorities' claims in Count V here.