**Beverly J. SCHENCK, Appellant**

v.

**TOWNSHIP OF CENTER, BUTLER COUNTY, Pennsylvania.**

Commonwealth Court of Pennsylvania.

Argued Oct. 17, 2005.

Decided Feb. 28, 2006.

---

850

Robert F. Hawk, Butler, for appellant.

Manning J. O'Connor II, Pittsburgh, for appellee.

BEFORE: FRIEDMAN, Judge, COHN JUBELIRER, Judge, and SIMPSON, Judge.

OPINION BY Judge SIMPSON.

This case involves a request under the law commonly known as the Right to Know Act (Act),[1] by an adverse party for a description of billed litigation services ren-dered to a municipality by its solicitor. Beverly J. Schenck (Plaintiff) appeals from an order of the Court of Common Pleas of Butler County (trial court) essentially de-nying disclosure of a description of legal services rendered in litigation.

Plaintiff filed a request with the Town-ship of Centre seeking copies of itemized invoices from its solicitor, Michael D. Gallagher, for the period from December 2002 through 2003. The requested in-voices included bills for the solicitor's ser-vices in a pending action filed by Plaintiff against four members of the Township's Board of Supervisors.[2]

Thereafter, the Township sent Plaintiff copies of the solicitor's invoices that relat-ed to general legal services. However, the Township indicated that further review of invoices for litigation services was neces-sary to determine whether any entries were subject to attorney-client privilege, attorney work product privilege or deliber-ative process privilege and thus not sub-ject to access under the Act.

Later, the Township sent Plaintiff copies of the solicitor's invoices that related to litigation matters, explaining that the "de-scription of services rendered" for each charge was redacted pursuant to section 3.2 of the Act, 65 P.S. § 66.3.2.[3] The copies provided to Plaintiff reflected the identity of the case for which the services were provided, the dates that the services were provided, the name of the attorney provid-

---

1. Act of June 21, 1957, P.L. 390, *as amended*, 65 P.S. §§ 66.1–66.9.

2. In that action, the trial court sustained sev-eral of the Township's preliminary objections on July 14, 2003. Nine days later, Plaintiff filed her request under the Act. The trial court subsequently dismissed Plaintiff's complaint by order dated February 26, 2004. Plaintiff unsuccessfully appealed to this Court, and to the Supreme Court, which denied appeal by allowance. (Township's brief at.1.)

3. Section 3.2 of the Act was *added by* the Act of June 29, 2002, P.L. 663. It provides that where information not subject to access is an integral part of the public record and cannot be separated, the agency shall redact the in-formation that is not subject to access and grant access to the remainder of the public record.

ing the services, the time expended, the hourly rate and the total amount charged. The Township also attached a letter from the solicitor to the Township advising that the described services are not subject to access under the Act.[4]

Ultimately, Plaintiff filed a complaint against the Township,[5] seeking an order directing the Township to provide un-redacted copies of the invoices and awarding attorney fees and costs. Thereafter, the Township filed a motion for judgment on the pleadings. Plaintiff filed a motion for summary judgment, and the Township asked the trial court to consider its motion for judgment on the pleadings as a cross-motion for summary judgment.

The trial court heard argument, but did not receive evidence. During argument, Plaintiff's counsel asserted that the Township needed to produce the invoices to prove that the documents were not accessible. However, special counsel now representing the Township argued that production of the invoices was not required. According to Township's special counsel, this controversy involved only a question of law, that is, whether the services description of a solicitor's invoice is subject to access under the Act.

The trial court determined the description of services portion of litigation invoices constitutes attorney work product and does not qualify as a public record. It therefore granted summary judgment to the Township, thereby affirming the action taken by the Township.

A timely appeal was taken to this Court.[6] Plaintiff assigns numerous trial court errors, including: error by making a decision without examining the un-redacted invoices; error by failing to identify a statutory basis for its decision and by relying on inappropriate cases; error by permitting the solicitor to raise privilege properly belonging to the client municipality; and, error by denying access in the absence of just and proper cause. Plaintiff also asserts she was denied due process because the solicitor was biased and did not immediately "recuse himself" from the

4. Plaintiff filed exceptions to the partial denial of her request, contesting the solicitor's assertions that the redacted information was not accessible under the Act. By letter, the Township informed Plaintiff that at its regularly scheduled meeting of September 10, 2003, the Board of Supervisors voted to deny her exceptions. Thereafter, attorney Manning J. O'Connor II, who was retained by the Township as special counsel, served Plaintiff with findings of fact and conclusions of law in support of the Board of Supervisors' decision. Reproduced Record (R.R.) at 52a–64a. In pertinent part, the Board of Supervisors found that the solicitor's invoices reflect summaries of legal advice given to the Township and contain descriptive entries that include mental impressions, strategy, tactics and other matters that are subject to the attorney-client privilege, the work product privilege and/or the deliberative process privilege. (Findings of Fact, Nos. 24, 33, 34.) Thus, the Board of Supervisors concluded that the Township properly redacted that information.

5. Section 4 of the Act, 65 P.S. § 66.4(b), provides that a requester may file a petition for review, or other document as may be required by local rule, with the court of common pleas, within thirty days of the denial of a request or final decision affirming the denial of a request by a non-Commonwealth agency.

6. Our standard of review in a Right to Know Act case is whether an error of law was committed, constitutional rights were violated, or necessary findings of fact are supported by substantial evidence. *Inkpen v. Roberts*, 862 A.2d 700 (Pa.Cmwlth.2004). As to questions of law, the scope of review is plenary. *Id.* We review the agency's decision. *See* Section 4 of the Act, *as amended* by Act of June 29, 2002, P.L. 663, 65 P.S. § 66.4(d) (record on appeal consists of request, response, exceptions, any agency hearing transcript, and agency's final determination).

Township's initial determination, thereby perpetuating a conflict of interest.

■ The primary issue we decide is whether the description of litigation-related legal services in a solicitor's invoice is shielded from access under the Act. We hold that it is, although for reasons different than those upon which the trial court relied. *Brown v. Blaine*, 833 A.2d 1166 (Pa.Cmwlth.2003) (Commonwealth Court may affirm trial court for any reason so long as the basis of decision is clear).

■ A party asserting right to disclosure of documents pursuant to the Act must establish that the requested documents were generated or kept by "an agency" and that they constitute "public records." *Goppelt v. City of Phila. Revenue Dep't*, 841 A.2d 599 (Pa.Cmwlth.2004). The party seeking access bears the burden of establishing that the requested material bears the characteristics of a public record. *Id.*

Here, there is no dispute that the invoices in question bear the characteristics of a "public record" as defined in the Act. However, this does not conclude our inquiry, as certain types of privilege may exclude the invoices from the definition. *See LaValle v. Office of General Counsel*, 564 Pa. 482, 769 A.2d 449 (2001) (attorney work product and materials reflecting predecisional, internal deliberative aspects of agency decision making not qualify as public records under the Act).

■ Statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things. 1 Pa.C.S. § 1932(a). Statutes in pari materia shall be construed together, if possible, as one statute. 1

Pa.C.S. § 1932(b). Statutes are to be construed in harmony with the existing law and as part of a general and uniform system of jurisprudence. *Northern Tier Solid Waste Auth. v. Dep't of Revenue*, 860 A.2d 1173 (Pa.Cmwlth.2004).

■ The Act is one of a series of legislative enactments designed to provide a comprehensive format governing public access to the meetings and hearings of public agencies. *Judge v. Pocius*, 28 Pa.Cmwlth. 139, 367 A.2d 788 (1977). The other statutes are now embodied in the Sunshine Act.[7] *Id.* Because they relate to the same class of things, information about actions by public agencies, the Act and the Sunshine Act are in pari materia. *See Mellin v. City of Allentown*, 60 Pa.Cmwlth. 114, 430 A.2d 1048 (1981) (open meeting laws and right to know laws in pari materia with provisions of Third Class City Code addressing open meetings and open journals); 1974 Op. Att'y Gen. Pa. 175 (Right to Know Act presumed to be read in pari materia with Sunshine Act). Indeed, this has been the practice for Commonwealth agencies since 1974. 1974 Op. Att'y Gen. Pa. 175 (attorney general opinion regarding Act binding upon Commonwealth agencies, advisory as to other governmental bodies); *see* 1977 Op. Att'y Gen. Pa. 40, 4 D. & C.3rd 218 (Pa.Dept.Just.1977). Therefore, they shall be construed together, if possible, as one statute.

A provision in the Sunshine Act permits an agency to conduct some of its business in executive session, outside the view of the public. Thus, 65 Pa.C.S. § 708(a)(4) permits an executive session so the agency may "consult with its attorney or other professional advisor regarding information

7. 65 Pa.C.S. §§ 701–716. The former Open Meeting Law, Act of July 19, 1974, P.L. 486, *as amended, formerly* 65 P.S. §§ 261–269, was repealed by the former Sunshine Act, Act of July 3, 1986, P.L. 388, *as amended, formerly* 65 P.S. §§ 271–286, which in turn was repealed and reenacted in codified form by the Act of October 15, 1998, P.L. 729.

or strategy in connection with litigation or issues on which identifiable complaints are expected to be filed." This provision acknowledges that the public would be better served if the governing body had private discussions on matters in litigation prior to public resolution. *Reading Eagle Co. v. Council of City of Reading,* 156 Pa. Cmwlth. 412, 627 A.2d 305 (1993). If knowledge of litigation information became public, it would impair a municipality's ability to defend those matters. *Id.*

This statutory exception from the disclosure provisions of the Sunshine Act broadly relates to information in connection with pending or impending litigation. It is not limited to attorney work product.

Construing the Act and the Sunshine Act together as one statute and as part of a uniform system of jurisprudence, this exception from disclosure applies here. Indeed, it would be absurd if litigation information from the solicitor was protected the evening of a municipal meeting, but it could be accessed the next morning through a description of litigation-related legal services in an invoice. We presume such an unreasonable result is not intended. 1 Pa.C.S. § 1922(1). Under this construction, it is not necessary for a trial court to read every invoice and evaluate every described service for the presence of attorney work product. Instead, all information from the solicitor relating to pending or impending litigation is inaccessible.

Turning now to the specific arguments raised by Plaintiff, we hold they lack merit. The Township did not err when it denied access to the description of litigation-related services, because the litigation information provision of the Sunshine Act is construed to be part of all statutes with which it is in pari materia, including the Act. The solicitor properly protected the information in the absence of his client's consent to disclose it. Rule 1.6(a) of the Rules of Professional Conduct, 204 Pa. Code § 81.4, Rule 1.6(a) (Explanatory Comment [3]: "The *confidentiality rule,* for example, *applies* not only to matters communicated in confidence by the client but also *to all information relating to the representation, whatever its source."* (emphasis added); Explanatory Comment [4]: "Paragraph (a) prohibits a lawyer from revealing information relating to the representation of a client. *This prohibition also applies to disclosures by a lawyer that do not in themselves reveal protected information but could reasonably lead to the discovery of such information by a third person."* (emphasis added).) *See also,* 1977 Op. Att'y Gen. Pa. 40.

As to the request for hearing on remand, we decline the invitation. As previously discussed, it is not necessary for someone to cull through each service described in each invoice searching for attorney work product.

■ Plaintiff also makes a brief argument that Section 704(2) of the Second Class Township Code, 53 P.S. § 65704(2),[8] which requires a township treasurer to keep accounts open for inspection by supervisors and citizens, also supports access. This argument was not made to the trial court, nor was it preserved in the Statement of Matters Complained of on Appeal. Moreover, the argument is meritless, as provisions in the Second Class Township Code relating to open journals shall be read in pari materia with the Act and the Sunshine Act. *See Mellin v. City of Allentown.*

■ Regarding the claim of denial of due process for failure of the solicitor to withdraw earlier, we discern no merit, for several reasons. First, there is no indication in the record that Plaintiff sought the

8. Act of May 1, 1933, P.L. 103, *as reenacted and amended.*

solicitor's disqualification. Second, as to the merits, there is no obvious reason why the interests of the solicitor and the Township are in conflict. Instead, both seem equally motivated to protect information about current litigation. Because Plaintiff fails to explain the conflict or to refer to any Rule of Professional Conduct or of Disciplinary Enforcement which the solicitor supposedly violated, there is no basis for relief on the theory of conflict of interest. Third, we conclude the solicitor's advice was correct.

For all the foregoing reasons, we hold that the description of litigation-related services in a solicitor's invoice is not accessible under either the Act or the Sunshine Act in the absence of consent from the client municipality. Therefore, we affirm the trial court's grant of summary judgment to the Township.[9]

### ORDER

AND NOW, this 28th day of February, 2006, the order of the Court of Common Pleas of Butler County in the above-captioned matter is **AFFIRMED.**

Dissenting Opinion by Judge FRIEDMAN.

I respectfully dissent. The narrow issue raised in this appeal is whether the description of services rendered by a township solicitor, as set forth in the solicitor's invoices, constitutes attorney work product as a matter of law. In affirming, the majority concludes that "*all* information from the solicitor relating to pending or impending litigation is inaccessible" to the public under the law commonly known as the Right to Know Law (Law).[1] (Majority op. at 854) (emphasis added).

The majority reasons that: (1) the Law and the Sunshine Act[2] are in *pari materia* because they relate to the same class of things (access to information about actions by public agencies);[3] (2) because they are in *pari materia*, the statutes shall be construed together, if possible; (3) section 8(a)(4) of the Sunshine Act, 65 Pa.C.S. § 708(a)(4), permits an agency to hold executive session for the purpose of consulting with its attorney regarding information in connection with litigation; (4) this exemption from the Sunshine Act's requirement to hold public meetings is not limited to attorney work product; and, therefore, (5) *all information* from the solicitor related to pending or impending litigation is inaccessible to the public under *both* statutes.[4] (Majority op. at 853–54.)

Under the analysis employed by the majority, *all disbursements made by a gov-*

---

**9.** In the absence of any authority that the Pennsylvania Rules of Civil Procedure in general, and the discovery rules in particular, apply to this statutory appeal under the Act, we decline to embrace the dissent's discussion regarding discovery rules and cases applying them.

**1.** Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§ 66.1–66.9.

**2.** 65 Pa.C.S. §§ 701–716.

**3.** I agree that the Law and the Sunshine Act are part of a series of enactments designed to provide a comprehensive format governing public access to official information and meetings of public agencies. The two statutes are distinguishable, however, in that *the in-*

*tent of the Law is to ensure the availability of government information* to the citizens of the Commonwealth by permitting access to official information, *Tribune–Review Publishing Co. v. Allegheny County Housing Authority,* 662 A.2d 677 (Pa.Cmwlth.1995) *appeal denied,* 546 Pa. 688, 686 A.2d 1315 (1996), whereas *the object of the Sunshine Act was to open the decision-making processes* of state government to greater public scrutiny and accountability. *Consumers Education and Protective Association v. Nolan,* 470 Pa. 372, 368 A.2d 675 (1977).

**4.** The majority then cites Rule 1.6 of the Rules of Professional Conduct and states that "the solicitor properly protected the information in the absence of his client's consent to disclose

*ernment agency that flow from deliberations shielded from public scrutiny under the Sunshine Act would be protected from disclosure under the Law.* I submit that the majority's analysis ignores the important distinction between the two statutes and is contrary to well-settled law.

Significantly, although the Law and the Sunshine Act are similar in design, *they are not applicable to the same specific issues.* The Sunshine Act applies to *official action and deliberations* by a quorum of agency members and requires that the same take place at a public meeting. The Law, on the other hand, applies only to *"public records,"* a term specifically defined by that statute to mean *certain documents,* i.e., "any account, voucher or contract dealing with the receipt or disbursement of funds ... and any minute, order or decision by an agency...." 65 P.S. § 66.1 *Because the statutes are intended to apply to different, specific matters, application of the two statutes will yield different results, even where the general matter at issue is substantially similar.*

The Sunshine Act permits an agency to meet in executive session for the purpose of: discussing any employment matter; discussing the negotiation or arbitration of collective bargaining agreements; considering the purchase or lease of real property; consulting with an attorney; and discussing other matters protected by a lawful privilege. 65 Pa.C.S. § 708. However, once public funds are expended, regardless of whether the expenditure flows from deliberations in an executive session, documents reflecting that expenditure are public documents subject to access under the Law. 65 P.S. § 66.1. See *Tribune–Review Publishing Company v. Westmoreland County Housing Authority,* 574 Pa. 661, 833 A.2d 112 (2003) (*holding that litigation settlement between a public entity and its employees was a public document under the Act*); *Legal Capital, LLC v. Medical Professional Liability Catastrophe Loss Fund,* 702 A.2d 869 (Pa.Cmwlth.1997), *aff'd,* 557 Pa. 10, 731 A.2d 132 (1999) (*holding that settlement records concerning medical malpractice claims were public records under the Right to Know Law unless a statuto-*

it." (Majority op. at 854.) However, the Rules of Professional Conduct do not apply to government agencies, but only to professionals engaged in the practice of law. Because Plaintiff here requested public records from the Township itself and not from the Township's counsel, the Rules of Professional Conduct have no bearing on this matter.

In quoting the explanatory comment to Rule 1.6, the majority impliedly holds that this rule provides a separate basis for denying public access *to the entire invoice under the Law.* Such a holding has no support in the law, and *it ignores the critical distinction between private entities, to whom the Law does not apply, and public entities, which are accountable to the public for the expenditure of public funds. Unlike a private individual, a township may not conceal the fact that it has engaged legal representation once the township has disbursed public funds or entered into a contract to do so. See* 65 P.S. § 66.1.

In addition, the majority does not conclude that the redacted information at issue in this case is protected by the attorney-client privilege. Nevertheless, I note that it is well-settled that the attorney-client privilege does not apply to *all* documents prepared by an attorney. *See, e.g., Slusaw v. Hoffman,* 861 A.2d 269 (Pa.Super.2004) (holding that invoices were not privileged documents to the extent that they do not disclose confidential communications), and *Joe v. Prison Health Services, Inc.,* 782 A.2d 24 (Pa.Cmwlth.2001) (holding that the defendants failed to establish that any documents for which they claimed attorney-client privilege were confidential communications for which attorney-client privilege is properly invoked). There is no indication in the majority opinion, or in the record, that the redacted information consists of or reflects confidential communications between attorney and client.

*ry exception to the act applied*); and *Morning Call, Inc. v. Lower Saucon Township*, 156 Pa.Cmwlth. 397, 627 A.2d 297 (1993) (*holding that settlement agreement between township and private party was a public record subject to disclosure under the Law*).

There is no dispute that records reflecting attorney work product doctrine do not qualify as public records under the Law. *LaValle v. Office of General Counsel*, 564 Pa. 482, 769 A.2d 449 (2001). However, *LaValle* does not support the majority's statement that certain types of privilege "may exclude *the invoices*" from the definition of a public record. (Majority op. at 853.) Rather, the court in *LaValle* held that the report at issue was not subject to disclosure under the Law "*to the extent that [it] constitutes work product ....*" *Id.* at 497, 769 A.2d at 458. Therefore, I believe that the narrow issue raised in this case, i.e., whether the descriptions of services rendered as set forth in an attorney's invoice constitutes attorney work product as a matter of law, must be addressed.

The work product doctrine evolved from the holding in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) (recognizing a qualified immunity from discovery "for the work product of a lawyer"),[5] and is embodied in Pa. R.C.P. No. 4003.3, which states:

> Subject to the provisions of Rules 4003.4 and 4003.5, a party may obtain discovery of any matter discoverable under Rule 4003.1 *even though prepared in anticipation of litigation or trial* by or for another party or by or for that other party's representative, including his or her attorney, consultant, surety, indem-

nitor, insurer or agent. *The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories.* With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics.

The comment to the rule states that this rule is carefully drawn and means exactly what it says. "It immunizes the lawyer's mental impressions, conclusions, opinions, memoranda, notes summaries, legal research and legal theories, nothing more." Pa. R.C.P. No. 4003.3, Explanatory cmt.—1978.

The majority's broad holding (that all information from the solicitor related to litigation, not just attorney work product, is inaccessible to the public under both statutes) would lead to an absurd result: an individual such as Plaintiff would not be entitled to review documents related to litigation under the Law, but would be entitled to obtain production of the same documents through discovery, which only protects attorney work product.

The specific question presented here has not been decided by our appellate courts. However, federal decisions have addressed the applicability of the attorney-client privilege and work product doctrine in the context of discovery disputes. Federal courts have held that attorney billing statements and time records are subject to the attorney-client privilege to the extent those records reveal the nature of services

---

**5.** The majority dismisses the analysis of the work product doctrine undertaken in cases concerning discovery issues. I submit, however, that whether attorney work product is protected from disclosure by discovery rules, statute or common law, the determination of whether particular information is or is not attorney work product requires the same analysis.

performed. *See e.g., Fidelity & Deposit Co. of Maryland v. McCulloch*, 168 F.R.D. 516 (E.D.Pa.1996). However, *federal courts have repeatedly reviewed documents in camera when deciding claims that documents are protected from discovery under the attorney-client and/or work product privilege*. For example, see *Valenti v. Allstate Insurance Co.*, 243 F.Supp.2d 200 (M.D.Pa.2003), wherein the "description of services" was redacted from legal invoices in an action seeking attorney fees. The court reviewed a privilege log listing more than 100 redacted documents, with all of the redactions based on claims that the redacted material related to an attorney's mental impressions, conclusions or legal strategy. *After reviewing the unredacted documents, the court rejected numerous assertions that the descriptions of services were protected by the work product doctrine as unfounded*. See also *Carter v. City of Philadelphia*, 2000 WL 632988, 2000 U.S. Dist. Lexis 6658 (E.D.Pa. No. 97–4499, filed May 5, 2000), and *Garvey v. National Grange Mutual Insurance Co.*, 167 F.R.D. 391 (E.D.Pa.1996), reflecting the court's *in camera* review of documents claimed to be protected by the work product doctrine and attorney-client privilege. Similarly, in the context of a probate proceeding, *In re Estate of Wood*, 818 A.2d 568 (Pa.Super.2003), *appeal denied*, 584 Pa. 696, 882 A.2d 479 (2005), *our superior court instructed the trial court to review material*

in camera to determine if protection under the work product doctrine was warranted.

Contrary to the approach taken by the majority here, *in these cases the courts declined to base their decisions on the mere assertions of a party that the privilege applies*. I, too, would decline to accept the Township's mere assertions in this matter as sufficient to support the grant of summary judgment. Instead, I would hold that the issue presented here is a mixed question of fact and law that cannot be answered without review of the solicitor's invoices.[6]

The trial court did not review the invoices at issue, and its determination is not supported by any other evidence of record. Accordingly, I would reverse.

---

**6.** *Reading Eagle Co. v. Council of City of Reading*, 156 Pa.Cmwlth. 412, 627 A.2d 305 (1993), the case upon which the majority relies, does not support the majority's analysis. In *Reading Eagle Co.*, the issue before the court was the specificity of the reason for holding executive session that must be disclosed to the public under section 8 of the Sunshine Act, 65 Pa.C.S. § 708. The court observed that section 8 of the Sunshine Act acknowledges that the public is better served if the governing body is permitted to have private discussions of litigation matters.

However, we determined that the reason given for the executive session must be genuine and meaningful, and one the citizen can understand, because permitting "generalized fluff would frustrate the very purpose of the Act." *Reading Eagle*, 627 A.2d at 307 (quotation omitted). We rejected the city council's contention that the public could be adequately informed without identifying the general nature of the complaint to be discussed at executive session; we also rejected the city council's assertion that the outcome of our decision was unduly burdensome.